Parker J. Stone, J.
Plaintiffs commenced an action against the defendant, Pattern Analysis and Recognition Corporation (PAR) to enjoin the carrying out of a plan of recapitalization by which the plaintiffs would be forced to sell their shares of stock in PAR at a stated price. Plaintiffs have simultaneously made a motion for a preliminary injunction pending the determination of the main action. PAR opposes the motion.
A preliminary injunction may be granted pursuant to CPLR 6301 where the defendant is threatening to do an act which would cause irreparable injury to the plaintiff and where the plaintiff has demonstrated a strong probability of ultimate success in the action, and thus a clear legal right to the relief now sought. (Graves v Lombardi, 42 AD2d 700; Damon Creations v James Talcott, Inc., 39 AD2d 677; Smith v Robilotto, 25 AD2d 454.)
*386 There is no question that the proposed recapitalization of the corporation would cause irreparable damage to plaintiffs as they would lose their status as shareholders. Whether plaintiffs have a strong probability of ultimate success depends upon a review of the pleadings and affidavits and a determination of the substantive merits of the action. The uncontested facts are briefly as follows:
The plaintiffs are former employees of PAR and during the course of their employment, they purchased shares of stock in PAR. After the plaintiffs left the employ of PAR, the board of directors and shareholders of PAR, by a majority vote, amended the certificate of incorporation and adopted a plan of recapitalization by which the outstanding shares of stock of PAR would be reduced on a ratio of 4,000 shares for every new share of the recapitalized issue. The effect of this plan was to reduce the authorized shares from 1,000,000 shares to 250 shares.
The plaintiffs each own less than 4,000 shares. Consequently, under the proposed plan, the plaintiffs would each own less than one share. As part of the same resolution, the issuance of fractional shares was disallowed and the corporation was authorized to purchase fractional shares on the basis of $1.50 per share, if the shareholders did not dissent, or $1.25 per share, if the shareholders did dissent.
The combined effect of the reclassification of shares and the refusal to issue fractional shares results in the plaintiffs being forced to sell their shares of stock.
Reclassification of stock by the vote of a majority of shareholders is unquestionably authorized by section 801 (subds [a], [b], par [11]) and subdivision (a) of section 803 of the Business Corporation Law. Additionally, sections 509 and 513 of the Business Corporation Law give to a corporation the option to issue fractional shares of stock or pay in cash the fair value of these fractional shares. The issue then which must be decided is whether the combined use of these two procedures under the specific facts of this case states a cause of action in favor of plaintiffs against PAR. Neither counsel nor the court is aware of a decision on this specific issue by a court of this State.
Judicial consideration has been given to a variety of corporate structure plans initiated by the majority of shareholders which result in the "freeze-out” of minority shareholders. In *387 such instances, the minority shareholders have been generally relegated to appraisal rights provided to them by statute. However, where there exists proof of fraud or illegality, equity will act, notwithstanding the availability of an appraisal remedy for the minority stockholders. (Matter of Willcox v Stern, 18 NY2d 195.)
The principle of equitable intervention in such cases, as noted in Matter of Willcox, is now codified in subdivision (k) of section 623 of the Business Corporation Law.
It has been urged that fraud or bad faith may affect valid statutory procedure only if there be a showing that the value of minority of shareholders’ stock is depreciated as a result. (Blumenthal v Roosevelt Hotel, 202 Misc 988.) Whether judicial intervention should be so circumscribed is not that clear. In Kavanaugh v Kavanaugh Knitting Co. (226 NY 185), it was recognized that insofar as a corporate dissolution is concerned, the Legislature intended that the directors proceed in good faith and with an honest belief that the board’s action is and will be beneficial and profitable to the corporation and stockholders, and that the judgment of the directors should not reflect their own interests or antagonism between themselves and other stockholders. "The directors are bound by all those rules of conscientious fairness, morality and honesty in purpose, which the law imposes as the guides for those who are under the fiduciary obligations and responsibilities” (p 193).
The plaintiff in Kavanaugh complained that a resolution instituting the dissolution of the corporation was prompted by bad faith and not by a bona fide consideration of the facts in relation to the general corporate interests, and that this resolution was adopted for the sole purpose of depriving plaintiff of his rights in the business in which the corporation was engaged. The issue framed by the court in Kavanaugh was whether the Legislature in enacting section 221 of the General Corporation Law (p 192) "intended that the directors shall proceed at the meeting of the board in good faith and in or through the honest belief that the action of the board is and will be beneñeial and proñtable to the corporation and stockholders. ” (Emphasis supplied.)
The court found that the Legislature so intended. "It is inconceivable that the legislature intended that the directors, in considering and adjudging the advisability of the dissolution, might consider and hold as a basis in whole or in part for their judgment their own individual desires or interests or the *388 mere unfriendliness or antagonism between themselves and others of the stockholders” (p 193).
No trust relation ordinarily exists between stockholders themselves, but as pointed out in Kavanaugh, a majority of stockholders when constituted either by themselves or by law as the managers of corporate affairs (p 195) "stand in much the same attitude towards the other or minority stockholders that the directors sustain, generally, towards all the stockholders, and the law requires of them the utmost good faith.”
Consequently, a minority stockholder will be protected against the threatened acts of a board of directors or managing stockholders if those acts violate their fiduciary obligations and cause the minority shareholder to sustain damage. This is so notwithstanding the fact that the corporation follows statutory mandates to the letter. "The statute empowers the directors and stockholders, under the prescribed procedure, to dissolve the corporation. The plaintiff took his stock subject to the provisions of the statute. Judicial authority does not extend to enjoining the exercise of a right conferred by legislative authority. The courts cannot pass upon the question of the expediency of the dissolution, for that is the very question which the legislature has authorized the board of directors and the stockholders to decide. They can, however, and will, whenever the facts presented to them in the appropriate action demand, inflexibly uphold and enforce, in accordance with established equitable principles, the obligations of the fiduciary relation. The good faith of the individual defendants is a proper and fundamental subject to be adjudged. Bad faith, fraud or other breach of trust constitutes a foundation for equitable relief.” (Kavanaugh, supra, p 196.)
PAR has submitted in support of its position, a case decided by the Supreme Court of Illinois, Teschner v Chicago Tit. & Trust Co. (59 Ill 2d 452). The plaintiff in the Teschner case was the owner of 63 shares out of 2,233,321 common shares issued by the defendant, Chicago Title and Trust Company. She refused to participate in either an exchange offer or the sale of her stock to another corporation (also a named defendant) which had acquired all but 1,890 shares held by 45 shareholders, including plaintiff. Chicago Title and Trust Company thereafter adopted a resolution to amend its articles of incorporation to reclassify the outstanding common shares into 3,722 shares, each new share having a par value of $4,000. The amendment would also provide that no stock *389 certificates representing fractional shares would be issued, but in lieu thereof, the defendant would exercise its statutory option to acquire such fractional shares from its stockholders for cash. The amendment was approved and plaintiff became the only dissenting stockholder.
Plaintiff petitioned the court to restore her status as a shareholder and to declare the action of the corporation illegal and invalid as a breach of fiduciary duty and as depriving her of property without due process of law, violating her right to equal protection of the law and impairing her contract rights.
The Illinois Supreme Court upheld the corporate action and in doing so, noted that generally (p 456) "unless there is fraud which would entitle dissenting shareholders to other relief, interests of minority shareholders can be terminated.” In this particular case, however, the court found no allegation of wrongdoing in the complaint, nor could it discover evidence of improper purpose. "The plaintiff’s complaint made no claim of fraud or deceptive conduct by the defendants. It did not charge that the exchange offer was unfair or that the price later offered for the shares was inadequate. The defendants stated in the circuit court that the corporate action of reclassifying stock and eliminating fractional shares was basically to reduce corporate expenses and simplify and facilitate procedures. The plaintiff did not allege or show any improper purpose on the part of the defendants. Considering the circumstances the judgment in favor of the defendants was proper.” (Teschner, supra, pp 458-459.)
The concept of justifiable corporate purpose has found recent support in the Federal courts. In Green v Santa Fe Ind. (No. 75-7256, 2d Cir, Feb. 18, 1976), the court was concerned with a short-form merger under the laws of the State of Delaware which permit a majority of 90% or more of the shareholders of a Delaware corporation to eliminate the minority shareholders upon payment to the minority shareholders an amount specified in the merger and without any statement of a justifiable corporate purpose for the merger. Although interpreting subdivision (b) of section 10 of the Securities Exchange Act of 1934 (US Code, tit 15, § 78j, subd [b]) and rule 10b-5 promulgated thereunder (17 CFR 240.10b-5), which makes it unlawful for any person directly or indirectly within the scope of the rule "to employ any device, scheme or artifice to defraud” or "to engage in any act, practice or course of business which operates or would operate *390 as a fraud or deceit upon any person, in connection with the purchase or sale of any security” the majority of the court recognized the fiduciary duty owed by the majority shareholder to the minority. It found that the complaint stated a cause of action when it alleged "that the majority has committed a breach of its fiduciary duty to deal fairly with minority shareholders by effecting the merger without any justifiable business purpose.” In construing rule 10b-5 flexibly and not in a technical and restrictive manner, the court was well aware of the "manipulations thought up by those connected in one way or another with transactions in securities.”
In support of its decision, the majority refers to another recent ruling wherein a shareholder’s motion for a preliminary injunction was granted against a proposed merger under the New York long-form merger statute (Business Corporation Law, § 901 et seq.) even in the absence of any allegation of misrepresentation or nondisclosure. In Marshel v A.F.W. Fabric Corp. (No. 75-7404, 2d Cir, Feb. 13, 1976), the court found that it "must look through the technical form to ascertain the substance of the transaction.” The court held that an injunction would issue under section 10b and rule 10b-5 "When controlling stockholders and directors of a publicly-held corporation cause it to expend corporate funds to force elimination of minority stockholders’ equity participation for reasons not benefiting the corporation but rather serving only the interests of the controlling stockholders”.
So too, a minority shareholder under the law of this State should not be relegated to an appraisal right solely by reason of the fact that an appraisal right exists. Where there is an allegation of fraud, illegality or bad faith, coupled with a tenuous showing of legitimate corporate business purpose, fairness requires that a minority shareholder be afforded an opportunity to fully contest the actions of the majority before he is deprived of his property. Where a strong and compelling corporate business purpose is shown, however, the courts should not interfere at the mere whim of a dissident shareholder.
Plaintiffs allege in their supporting affidavit "That such action of the corporation was taken without a substantial business purpose therefor and for the sole reason to eliminate all of the above named shareholders by payment to them of alleged book value of the shares. That said action is unlawful and fraudulent and taken for the sole purpose of depriving all *391 of the above said persons of their shares in the corporation.” PAR’s affidavit in opposition indicates that the sole reason for the reclassification of shares and the elimination of fractional shares was to remove the plaintiffs as shareholders. This is clear from the affidavit of the president of PAR. This action by PAR is supposedly justified on the basis that all remaining shareholders would be employees of PAR having a substantial interest both with respect to stock ownership and management responsibility. Further, PAR contends that in this manner, the confidentiality of PAR’s financial statements could be maintained. It is acknowledged by PAR, however, that there are other shareholders who are not employees of PAR but who are close relatives of shareholders and who, it is presumed, would remain as shareholders under the proposed recapitalization. Plaintiffs point out that PAR has never issued a financial statement to date; that the restrictions on the transfer of shares have never been imposed by the board of directors, nor has the board of directors authorized a right of redemption which would be exercised in the event a shareholder employee left his employment.
Upon all the proof submitted, the court finds that there is absent a strong and compelling legitimate business purpose supportive of the action taken by the defendant. Plaintiffs have demonstrated a strong probability of ultimate success to justify the granting of a temporary injunction pending the final determination of the issues.
Plaintiffs’ motion is granted.