WYNDHAM H. GABHART *v.* HOWARD GABHART, JEROME B. WALKER, CHARLES R. GABHART, THOMAS S. GABHART, WASHINGTON NURSING CENTER, INC. AND WASHINGTON HEALTH SERVICES.

[No. 377S187. Filed December 16, 1977.
Rehearing denied May 26, 1978.]

*Frank E. Spencer,* of Indianapolis, *Robert W. McNevin,* of Indianapolis, for appellant.

*Thomas M. Lofton, Virgil L. Beeler, Jerry R. Jenkins, Baker & Daniels,* of Indianapolis, for appellees.

PRENTICE, J.—This cause is before us under Ind. R. Ap. P. 15(O), which was formerly designated 15(N), upon application from the United States Court of Appeals for the Seventh Circuit. In order that our responses to the questions certified do not subsequently over-reach the intended application and so that the questions and answers may be viewed in the context of the pending litigation, we deem it advisable to set forth here the entire text of the Court of Appeals' application.

TONE, *Circuit Judge.* The appeal in this diversity action raises a number of questions concerning squeeze-out mergers accomplished through the merger provisions of the Indiana Corporation Act, Ind. Stat. Ann. § 23-1-5-1, *et seq.* The District Court entered a summary judgment against plaintiff, a squeezed-out minority shareholder. In reaching this decision, the District Court held that a minority shareholder who does not object and demand his appraisal rights under Ind. Stat. Ann. § 23-1-5-7 cannot attack an allegedly invalid merger and that a derivative action by such a shareholder does not survive a merger. As these are important questions of first impression under Indiana corporation law, we have determined that they are appropriate for certification to the Supreme Court of Indiana pursuant to Indiana Appellate Rule 15(N) and our Circuit Rule 13.

In 1968 plaintiff and the individual defendants, who are his father, his two brothers and one Jerome B. Walker, joined in organizing corporate defendant Washington Nursing Center, Inc. to operate a nursing home in Washington, Indiana. Plaintiff received 100 of the 500 shares of outstanding stock.

All five shareholders were directors until 1970, when plaintiff resigned, stating that he was doing so because, "[A]mong other reasons, I will find it most difficult to attend directors' meetings," and "I am not in position to help manage the corporation under existing circumstances." Plaintiff lived in the South and was engaged in a business which required him to travel with carnivals in places distant from Indiana.

Extended efforts to negotiate a purchase of plaintiff's shares by the other shareholders proved unsuccessful. In 1972 the other shareholders conceived and carried out a corporate restructuring under the Indiana Corporation Act which would have the effect of transferring the assets of the corporation to a new corporation in which plaintiff would not be a stockholder and compensating plaintiff for his interest in the old corporation by giving him a debenture.

The agreement of merger was entered into between the old company (the "Merging Company") and a newly-formed corporation (the "Surviving Company"), the stock of which was owned by the individual defendants. First executed by the boards of directors of the two companies and then approved by their stockholders, all in conformity with the Act, the agreement provided that on the effective date of the merger the following would occur:

(1) The Merger Company will merge into and become a part of the Surviving Company, leaving the Surviving Company with all the property of both companies and all the rights and liabilities of both companies.

(2) "Any claim existing or action or proceeding pending by or against the Merging Company or the Surviving Company may be prosecuted to judgment as if the merger had not taken place or the Surviving Company may be substituted in the place of the Merging Company."

(3) Each shareholder of the Merging Company shall surrender his shares and receive in exchange therefor a debenture equal in amount to the number of his shares times $300, the debenture to bear interest at 7½% and to mature in 5 years.

(4) Each stockholder of the Merging Company "shall cease to be such and shall have no interest in or claim against the Surviving Company by reason of having been such a shareholder, except the right to receive the above described debenture."

On June 23, 1972, a copy of the merger agreement and a notice of the special meeting of shareholders of the Merging Company called for July 3, 1972 to vote on the merger were sent to plaintiff by registered mail at the three addresses shown for him on the corporation's books. He did not receive the mailing, however, until July 10, one week after the shareholders' meeting and 23 days before the expiration of the time allowed him by §§ 32 and 37 of the Act, Ind. Stat. Ann. §§ 23-1-5-2(e) and 23-1-5-7, to object to the merger and demand payment of the value of his shares. On July 6, notice of the approval of the merger by the shareholders of the Merging Company was sent to plaintiff, who received it on July 17, 16 days before expiration of the time to object and demand. Plaintiff did not pursue the object-and-demand procedure.

Before the effective date of the merger, the individual defendants, who were the only shareholders of the Surviving Company, exchanged their stock in the Merging Company for additional stock in the Surviving Company in proportion to their existing interests in the Surviving Company. Thus plaintiff and the Surviving Company were left as the only shareholders of the Merging Company, which was then dissolved, and only plaintiff was to receive a debenture in exchange for his stock.

After approval of the merger by the stockholders of both companies, but before the date the merger was to become

effective, plaintiff filed this action against the Merging Company and the individual defendants, as officers and directors of that company, alleging that the latter had wronged the corporation by appropriating corporate funds for their own use and had wronged him by denying him access to corporate records and participation in corporate decisions. The only pecuniary injury alleged was to the corporation. It is agreed by the parties that this action was derivative insofar as it sought pecuniary relief.

After the merger had become effective defendants moved for summary judgment on the ground that plaintiff, who was no longer a shareholder, could not maintain an action on behalf of the corporation. In response to this motion, plaintiff amended his complaint by adding a count attacking the validity of the merger. Plaintiff alleged that by failing to inform him of the planned stock-for-stock exchange, defendants had fraudulently misrepresented the terms of the merger and that the sole purpose of the merger had been to deprive him of his interest in the business operated by the Merging Company.

Defendants' motion for summary judgment was supported by affidavits, documents, and depositions. Plaintiff did not file any controverting affidavits or other material. The only issue identified in his "Statement of Genuine Issues," filed in accordance with a rule of the District Court, was "as to the validity of the alleged merger."

In the District Court plaintiff argued that summary judgment was improper because there were genuine issues of fact concerning the defendants' intent in arranging the merger. For purposes of this appeal, we assume that the facts are as plaintiff alleges: that the merger agreement was intentionally misleading, that defendants knew the notices they sent were likely not to reach plaintiff in time, and that the sole purpose of the merger was to eliminate plaintiff as a stockholder.[1]

Turning first to the claim of fraudulent misrepresentation of the terms of the merger, an analysis of the uncontro-

---

1. The District Court found as a fact that defendants arranged the merger because plaintiff's threats of a stockholder's suit made it impossible for the corporation to attract necessary additional financing. Plaintiff had alleged, however, that defendants sought to eliminate him in order to conceal their mismanagement of the corporation. If the issue of motivation was relevant, plaintiff should not have been foreclosed by the defendants' statements of what their motives were, and the determination of this controverted issue on a summary judgment motion was error. *Cf. Poller* v. *Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473 (1962).

verted facts shows that claim to be without merit. Although plaintiff was unaware of the contemplated stock-for-stock exchange which was to precede the merger, he does not allege that his failure to dissent from the merger was induced by his misunderstanding of its terms. From the agreement, plaintiff knew that his ownership interest in the Merging Company would be converted into a creditor's interest in the Surviving Company. He could hardly have been prejudiced by the fact that the individual defendants made their part in the merger tax-free by taking additional stock, rather than debentures, in a company they already owned. Far from harming plaintiff, the elimination of four-fifths of the debenture obligations that the Surviving Company had agreed to assume presumably benefited him.

There is no genuine issue of fact relating to compliance with the formal requirements of the Act, including those relating to notice. Uncontroverted affidavits and documents show timely mailings and plaintiff's eventual receipt of the mailings. Plaintiff's present contention that he instructed the secretary of the corporation to send future notices to his attorney in Washington, Indiana, appears to be an afterthought. He did not refer to a notice issue before the District Court, either in his Statement of Genuine Issues or his memorandum in opposition to the motion for summary judgment. Plaintiff's deposition testimony on that issue would not support a finding that such an instruction was given: After much vacillation, his final version was that he had not personally notified the corporation of the change of address, but he "believed" his former attorney had done so by a letter which he could not recall seeing. No such letter has ever surfaced, and no affidavit or deposition from the attorney was ever filed. On the other hand, defendants' showing unequivocally establishes that the three addresses shown for plaintiff on the corporate records, to which notices were mailed, did not include that of the attorney.

Despite this showing of compliance with the Indiana merger provisions, plaintiff argues that the merger may be attacked under state law because it was not effected to accomplish a business purpose, but rather was a device used by the majority to deprive him of his stockholding interest. In support of his contention, plaintiff cites cases decided under Georgia law, *Bryan* v. *Brock & Blevins Co.*, 490 F.2d 563 (5th Cir.), *cert. denied*, 419 U.S. 844 (1974), and federal securities law, *Green* v. *Santa Fe Industries, Inc.*, 533 F.2d 1283 (2d Cir.), *cert. granted*, 97 S.Ct. 54 (1976). See also *Lebold* v. *Inland Steel* Co., 125 F.2d 369 (7th Cir.

1941), *cert. denied,* 316 U.S. 675 (1942) (West Virginia law).

Defendants do not respond directly to this argument. Instead, they contend that, once the notice requirements of the Act were satisfied and the terms of the merger were disclosed, it became plaintiff's responsibility to object and demand payment for the value of his shares. When he failed to do so, he was "conclusively presumed to have assented to [the] merger" under § 37 of the Indiana Corporation Act and thus could no longer attack its validity. Given the narrow scope of appraisal proceedings under the Act, this argument leads to the conclusion that a minority stockholder's only right in a merger is to payment of the fair value of his shares and therefore that he may be squeezed out in a merger, with or without a proper business purpose. Whether a shareholder's rights are so limited under Indiana law is an important question requiring interpretation of state statutes and state corporation policy which, in view of the certification procedure made available to us by Rule 15(N) of the Indiana Supreme Court, should be answered by that court as the authoritative and final arbiter of state law.[2]

Plaintiff's derivative claim for corporate waste and mismanagement also presents novel questions of Indiana law which are best resolved through the certification procedure.[3] Section 37 of the Indiana Corporation Act provides that upon the effective date of the merger a shareholder who has objected in writing and demanded payment of the value of his shares[4] "shall cease to be a shareholder and shall have no rights with respect to such shares except the right to receive payment therefor." Ind. Stat. Ann. § 23-1-5-7. The merger agreement in this case provides that upon the effective date of the merger "each shareholder of the Merging Company shall cease to be such and shall have no interest

2. In view of the defendants' failure to respond directly on the business-purpose issue, the Indiana Supreme Court, if it accepts the certification, may wish to request additional briefs from the parties on that point.

3. We find the other claims that plaintiff sought to assert individually for failure to account, to allow plaintiff access to corporate records, or to allow him to participate in management insufficient in law. Because he was not a director, plaintiff was not entitled to participate in management. On the other claims, he seeks no monetary damages, and his action was filed too late for effective equitable relief.

4. And who, if he and the corporation do not agree on the value within 30 days after the effective date of the merger, may institute appraisal proceedings in a state trial court.

in or claim against the Surviving Company by reason of having been such a shareholder, except the right to receive the above decided debenture." As noted above, under § 37 plaintiff was presumed to have consented to this provision. The merger agreement also provides, however, in the passage quoted in full above, that an action pending against the Merging Company "may be prosecuted to judgment as if the merger had not taken place" against either the Merging or the Surviving Company. Defendants argue that this survival-of-actions clause does not apply to plaintiff's derivative action because when he lost his status as a stockholder he fell victim to the rule that only a shareholder may maintain a shareholder's derivative action. Plaintiff argues that this result would render him unable to protect his interest against defendants' mismanagement because, even if he had objected to the merger, he would have lost his status as a shareholder by operation of law.

With the foregoing explanation, we respectifully certify the following questions to the Supreme Court of Indiana pursuant to Rule 15(N):

1. Assuming that the technical requirements of Indiana's merger statute were satisfied, could the minority shareholder in the Merging Company nevertheless attack the merger under Indiana law on the ground that it was not motivated by a valid business purpose? Or was his sole remedy to object to the merger and demand payment for the value of his shares within the prescribed time limits?

2. Assuming that the merger cannot be attacked, may the minority shareholder in the Merging Company, whose formal status as such was terminated by the merger, continue to prosecute a derivative action, filed after the approval but before the effective date of the merger, against the Merging Company or its successor? Or was the shareholder's sole remedy again that of objecting and demanding payment for the value of his shares and then litigating the derivative claim in the appraisal proceeding by asserting that the claim was a valuable right of the corporation which should be appraised and included in the corporation's assets?

3. If the minority shareholder's derivative action can be maintained as such and damages are recovered for the corporation in that action, may he recover in that proceeding his pro rata share of the damages, despite his

failure to object to the merger and demand payment for the value of his shares in accordance with the Indiana Corporation Act?

## ISSUE I

Ind. Code (Burns 1972) 23-1-5-7 provides the procedure whereby a shareholder of a corporation which is party to a merger may compel the corporation to purchase his shares. This right extends to those shareholders who fail to vote concerning the proposed merger as well as to those who dissented in the shareholder vote. To exercise this right of appraisal a shareholder must, after notice of the impending merger, object to the proposed transaction in writing and demand payment for the value of his shares, all within specified time limits. *Apartment Properties, Inc.* v. *Luley,* (1969) 252 Ind. 205, 247 N.E.2d 74; *State ex rel. General Grains, Inc.* v. *Superior Court of Marion County,* (1959) 239 Ind. 605, 159 N.E.2d 385. In the event the shareholder and the corporation fail to agree on a price to be paid for the shares either the shareholder or the corporation may petition a court, if the corporation is not a public utility, to have the value of the shares fixed in an action "the same, so far as practicable, as that under the eminent domain laws," Ind. Code 23-1-5-7.

Prior to the enactment of statutes that authorized mergers with simple majority approval and provided appraisal for dissenters, the common law of Indiana recognized a similar right for a dissenting shareholder to withdraw his shares in the event of a merger or consolidation. This was during a period when fundamental corporate changes could occur only by unanimous shareholder approval. *Mowrey* v. *Indianapolis & Cincinnati R. R. Co.,* (7th cir. 1866) 4 Biss. 78, or by special legislation, *McMahan* v. *Morrison,* (1861) 16 Ind. 172. If a minority shareholder dissented to the corporate action authorized by special legislation, he could withdraw his shares and receive payment from the corporation, *State* v.

*Bailey,* (1861) 16 Ind 46; *Matlock* v. *Indiana & I. C. R. Co.,* (1861) 16 Ind. 176, and could cancel his stock subscriptions, *Shelbyville, etc. Turnpike Co.* v. *Barnes,* (1873) 42 Ind. 498; *Martin* v. *Junction R. Co.,* (1859) 12 Ind. 605; *Booe* v. *Junction R. Co.,* (1858) 10 Ind. 93; *McCray* v. *Junction R. Co.,* (1857) 9 Ind. 358. The dissenting shareholder could enforce the judicially created analogue to appraisal by enjoining the consummation of the corporate action until he received compensation. *State* v. *Bailey, supra.*

When statutes of general application were enacted allowing fundamental corporate changes to occur with majority shareholder approval: see, e.g. § 5690 Burns Ind. Stat. Anno. 1914; Acts 1903, ch. 94, p. 181 (providing for the consolidation of street railroad companies) ; minority shareholders were bound by the decision of the majority in the absence of fraud or other illegality, *Norton* v. *Union Traction Co.,* (1915) 183 Ind. 666, 110 N.E. 113. In *Norton* this Court stated:

> "While the relation between stockholder and corporation is contractual and the obligation of the contract may not be impaired by subsequent state legislation, it must be assumed that where, at the time of incorporation, consolidation was authorized, the stockholder must have contracted, on subscribing for his stock, with reference to the possibility of a future consolidation. *Sparrow* v. *Evansville, etc. R. Co.* (1856), 7 Ind. 369; *Bish* v. *Johnson* (1863), 21 Ind. 299 * * *." 183 Ind. at 681.

This, however, was in response to the appellant's argument that a consolidation was unlawful, in the absence of unanimous stockholder consent. In *Raff* v. *Darrow,* (1916) 184 Ind. 353, 111 N.E. 189, this Court said in regard to a minority shareholder's attempt to enjoin a consolidation:

> "It is the policy of the law to leave corporate affairs to the control of corporate agencies and the courts are not warranted at the suit of minority shareholders in interfering with the management of such agencies even though it may be unwise and may result in loss, *except in a plain case of fraud, breach of trust, or such maladministration*

*as works a manifest wrong to them."* (Emphasis added) 184 Ind. at 360.

Concerning the question now before the Court, appellees suggest that the law of Indiana gives majority shareholders *carte blanche* to merge and that the present statutory appraisal right is the exclusive remedy available to minority shareholders who do not approve the terms of a merger agreement. Appellees maintain that plaintiff's failure to take the procedural steps necessary to invoke this appraisal right commits him to participate in the plan of merger and, in support of their position, refer to Ind. Code (Burns 1972) § 23-1-5-7, which reads:

> "Every shareholder who did not vote in favor of such merger or consolidation and who does not object in writing and demand payment of the value of his shares in the manner aforesaid, shall be conclusively presumed to have assented to such merger or consolidation."

Appellant urges that notwithstanding the seemingly controlling language of Ind. Code 23-1-5-7, appraisal is an alternative remedy in view of Ind. Code (Burns 1972) 23-1-12-4, which provides that the appraisal remedy "* * * (is) not intended and shall not be construed to cut off any rights of such shareholders which are provided for by any other applicable act of the State of Indiana * * * but * * * (is) intended * * * to provide alternative rights * * *." It is our opinion that this latter provision was not intended to provide dissenters with alternative means of withdrawing from the corporation and obtaining fair value for their shares, in the event of a lawful merger ordained by the majority. Rather, we believe it only emphasizes that which is not obscure, namely, that appraisal was enacted to protect minority interests when the common law rule of unanimity was abolished and that it was not intended to foreclose an affected shareholder's other rights in the matter.

The language in Ind. Code 23-1-5-7 that the failure to assert the right to appraisal establishes a "conclusive pre-

sumption" of stockholder assent to the merger demands some explanation. In that regard it is assumed the authors of the present appraisal statute were aware of the prior practice to enforce the judicially created right of appraisal by injunction, *State* v. *Bailey, supra,* and that having prescribed a procedure for asserting the statutory right, the legislature sought to make it the exclusive *procedure.* In other words, Ind. Code 23-1-5-7 established the right to appraisal, provided the procedure therefor and prohibited resort to the old practice of enforcing the right by enjoining the merger.

The issue, however, is not whether a dissenter to a lawful merger may resort to other means of recovering the value of his shares but rather whether the majority may force a merger having no corporate purpose. A merger effected for no valid business purpose and resulting in the elimination of a minority shareholder is commonly referred to as a "freeze-out" or a "squeeze-out." It may be defined as the use of corporate control vested in the statutory majority of shareholders or the board of directors to eliminate minority shareholders from the enterprise or to reduce to relative insignificance their voting power or claims on corporate assets, see Vorenberg, "Exclusiveness of the Dissenting Stockholder's Appraisal Right," 77 Harv. L. Rev. 1189 (1964). Furthermore, it implies a *purpose* to force upon the minority shareholder a change which is not incident to any other business goal of the corporation.

Although the form of such freeze-out transaction may vary and is not confined to merger or consolidation, the policy considerations are generally the same. The difficulty lies not with the identification of the relevant policies but with the reconciliation of conflicting policies consistent with the general goals of maximum shareholder benefit and equality of treatment. On the one hand is the necessity to provide adequate protection for the interests and expectations of minority

shareholders, and the other is the necessity of allowing sufficient corporate flexibility, as is required by modern commerce.

The statutory provisions, which allow a merger with less than unanimous shareholder approval and provide the right of a minority shareholder to receive the appraised value of his shares, represent an attempted compromise between these policies, and some courts have held that the availability of appraisal is an adequate remedy at law which precludes equitable relief. But, even if appraisal is an adequate remedy in the sense that the minority shareholder presumably can receive the investment value of his interest in the corporation, the policy favoring corporate flexibility is not furthered by permitting the elimination of minority interests for the benefit of the majority, when no benefit thereby accrues to the corporation.

In this vein the case of *Matteson* v. *Ziebarth*, (1952) 40 Wash. 2d 286, 242 P.2d 1025, is noteworthy primarily inasmuch as the Court seemed to give an unqualified sanction to the freeze-out of minority shareholders by holding Washington's appraisal statute to be an exclusive remedy, except in the case of actual fraud. But the court then included mergers which were effected for no legitimate business purpose within the scope of "actual fraud." In that case, Ziebarth Corporation was in the business of producing a powdered household bleach and had lost money "almost consistently." Majority shareholder Ziebarth had negotiated a sale of Ziebarth Corporation's stock to Gold Seal Corporation, and Ziebarth was to receive an employment contract with Gold Seal if the sale was completed. Gold Seal would not buy less than all of Ziebarth Corporation's stock, and minority shareholder Matteson refused to sell his holdings unless Ziebarth gave him twenty-five percent of the compensation Ziebarth was to receive under the employment contract. To eliminate Matteson and enable the sale to take place, Ziebarth merged the old corporation into a newly formed shell corporation and gave

Matteson redeemable preferred stock for his interest in the old corporation.

In affirming this merger, the court said:

"There is no basis whatever for holding that this stock-exchange plan evidences actual fraud. The redeemable feature was applicable to all stockholders of Ziebarth Corporation, and was necessary in order to consummate the option arrangement with Gold Seal. There was good reason to believe that this option contract was the only salvation for the hard-pressed Ziebarth Corporation.

"It is these facts which distinguish this case from Theis v. Spokane Gas Light Co., 34 Wash 23, 74 P. 1004, relied upon by appellant. In that case it was held that an attempted dissolution of a prosperous corporation and the transfer of its assets to a new corporation, *not for any bona fide business reason, but for the sole purpose of getting rid of a disagreeable stockholder* who refused to sell his stock, *was fraudulent* and would be set aside. The limited scope of the rule laid down in the Theis case has been previously noted in Smith v. Flathead River Coal Co., 66 Wash. 408, 119 P. 858; and Beutelspacher v. Spokane Savings Bank, 164 Wash. 227, 2 P.2d 729." (Emphasis added)

The case law concerning the validity of mergers effected for no corporate purpose is dominated by principles of contract and agency. Those jurisdictions which hold appraisal to be an exclusive remedy without regard for the underlying purpose of the corporate action tend to rely on contract principles, stating that the merger statute is part and parcel of the minority shareholder's contract, and the minority shareholder has thereby been put on notice that the majority may unilaterally alter the terms of the minority's investment. See: *David J. Greene & Co.* v. *Schenley Industries, Inc.*, (Del. Ch. 1971) 281 A.2d 30; *Beloff* v. *Consolidated Edison Co. of New York*, (1949) 300 N.Y. 11, 87 N.E.2d 561; *Anderson* v. *International Minerals & Chemical Corp.*, (1946) 295 N.Y. 343, 67 N.E.2d 573. (New York has since retreated from these cases which held appraisal to be an exclusive remedy, and now require that a merger be justified by a legitimate business purpose under agency principles. See: *Clark* v. *Pattern Analy-*

*sis & Recognition Corp.*, (1976) 87 Misc.2d 385, 384 N.Y.S. 2d 660).

On the other hand, those cases which allow a minority shareholder to preserve his status, in the absence of a legitimate corporate reason for change, emphasize agency principles and the fiduciary duty owed by controlling shareholders and directors to the minority. See: *Clark* v. *Pattern Analysis & Recognition Corp.*, *supra*; *Berkowitz* v. *Power Mate Corp.*, (1975) 135 N.J. Super. 36, 342 A.2d 566; *Bryan* v. *Brock & Blevins*, (5th Cir. 1974) 490 F.2d 563; *Lebold* v. *Inland Steel Co.*, (7th Cir. 1941) 125 F.2d 369.

Both positions have merit and respectable support, and it would be unwise to embrace one and to ignore the other. The "contract theory" represents a realistic appreciation of legislative power to affect shareholders' rights, but it is not a realistic view of the actual expectations with which an individual enters a closely held corporation. The "agency theory" recognizes the need for limits on majority power in order to protect minority interests; but it runs contrary to the traditional doctrine of corporate law that stockholders, *qua* stockholders, may act wholly in their own self interest, and it tends to ignore legislative prerogative to order corporate relations.

The corporate structure has been described as a three-way contract, representing the relations among shareholders, between shareholders and corporation, and between corporation and the State. However, to the extent that statutory law endeavors to regulate the relations among shareholders, or between shareholders and the corporation, such legislation should be limited to allow the maximum individual bargaining consistent with the statutory scheme. If it is reasonable to assume that minority shareholders take their stock with fore-knowledge of its possible confiscation by merger, it is equally reasonable that majority shareholders should foresee the potential for circumstances

that dictate the elimination of the minority and bargain for that right in advance.

In adopting the merger provisions under consideration, the Legislature neither authorized nor prohibited the elimination of minority interests by means of a merger not having a legitimate corporate purpose. It appears elementary that the Legislature intended to provide a procedure to allow mergers advancing the corporation's interests, notwithstanding the objections of an alienated minority, but it is not clear whether the Legislature intended to restrict the employment of these statutory provisions to such mergers. In the same enactment, however, it also provided a clear means by which a majority may, for whatever reason, divorce itself from the minority, that being voluntary dissolution, Ind. Code (Burns 1972) 23-1-7-1 *et seq.*, a measure which is obviously indifferent to both the minority interests and corporate interests. If the statutory majority sees fit to dissolve a profitable going concern in order to enhance their own interests, they may do so without regard for the corporation's best interests. The purpose of voluntary dissolution is to permit the severance of the relationships existing among the shareholders in a corporate structure, and if corporate suicide benefits all shareholders alike, it is a coincidence only.

The statutory provisions for merger and dissolution are alike in that notice and a majority vote is required. But there the similarity ends. In the event of a merger, provisions are made for special treatment of dissenters who wish to withdraw from the enterprise, and they are limited to such provisions. Under the voluntary dissolution statute there is no provision for appraisal or other special treatment of dissenters, but neither are they limited in their mode of redress if they are being improperly disadvantaged.

No sound reason appears for permitting the majority to employ merger procedures to accomplish a dissolution.

Absent objections from affected shareholders a dissolution might be effected by procedures other than those provided by statute for that purpose. However, the Legislature having provided a procedure, complete with safeguards to protect all shareholders, equity will not permit the circumvention of those safeguards by resort to a different procedure. The difference is not merely one of form. In a dissolution, a shareholder is not limited to appraisal proceedings, if he questions the fairness of the process. Rather, the liquidation and distribution of the corporate assets are subject to all principles of equity.

We, therefore, hold that in a bona fide merger proceeding, a dissenting or non-voting shareholder is limited to the means provided by statute for the realization of his equity. But we further hold that a proposed merger which has no valid purpose, which we construe to mean a purpose intended to advance a corporate interest, and which merger would eliminate or reduce a minority shareholder's equity, may be challenged, as a *de facto* dissolution, by shareholders entitled to vote upon an issue of dissolution. Such shareholders may enjoin a dissolution to be effected by procedures other than those provided by statute for that purpose.

The case before us is similar to the case of *Singer* v. *Magnavox Co.*, (Sept. 23, 1977) 380 A.2d 969. In that case, the Supreme Court of Delaware, in part reversing the decision of the Court of Chancery, (Del. Ch. 1976) 367 A.2d 1349, relied upon agency principles of fiduciary duty to hold that a corporate merger is subject to judicial scrutiny concerning its "entire fairness" to minority shareholders. We see no need to go that far in deciding the question before us. Under the Delaware view, it appears that every proposed merger would be subject to having its bona fides determined by judicial review. We do not believe the judiciary should intrude into corporate management to that extent. See *Raff* v. *Darrow*, (1916) 184 Ind. 353, 111 N.E. 189, quoted *supra*.

Confining a corporation to statutory procedures provided and intended to be utilized in accomplishing an obviously intended end result is not an unwarranted intrusion. And if it is clear that a corporation is being dissolved for the benefit of selected shareholders, rather than being merged for corporate purposes, affected shareholders have a right to have the dissolution carried out by the statutorily provided method.

## ISSUES II & III

In addition to attacking the validity of the merger, appellant has sought redress for wrongs done to the merged corporation by appellees in their positions as directors and officers of the merged corporation. This claim has been characterized as a corporate cause of action which appellant is attempting to assert on behalf of the merged corporation as a derivative of his shareholder status. Assuming the merger is valid, however, appellant is no longer a shareholder of the surviving corporation.

It is well established that being a shareholder of the corporation whose cause of action is to be enforced in a derivative suit is a prerequisite for standing to sue. Although any recovery usually accrues to the corporation rather than to the individual shareholders, the requirement of shareholder status to commence and maintain an action on behalf of a corporation insures that the party bringing suit will have, at least, an indirect interest in the outcome of the litigation. Any corporate recovery adds to the value of the shareholders' stock. See: *Mayflower Hotel Stockholders Protective Committee* v. *Mayflower Hotel Corp.,* (D.D.C. 1947) 73 F.Supp. 721, reversed on other grounds (D.C. Cir. 1949) 173 F.2d 416; *Everett* v. *Phillips,* (1942) 288 N.Y. 227, 43 N.E.2d 18.

When a corporation is merged out of existence, however, its assets and liabilities are transferred to the surviving

corporation by operation of law, Ind. Code (Burns 1972) 23-1-5-5, and the shareholders' interests in the merged corporation comes to an end. Not only do the former shareholders of the merged corporation cease to have an interest in the merged corporation's cause of action because of the termination of their shareholder status, but the merged corporation itself ceases to have an interest therein. The cause of action passes to the surviving corporation along with the other assets of the merged corporation. See: *Basch* v. *Talley Industries, Inc.*, (S.D.N.Y. 1971) 53 F.R.D. 9; *Heit* v. *Tenneco, Inc.*, (D. Del. 1970) 319 F.Supp. 884; *Bokat* v. *Getty Oil Co.*, (Del. 1970) 262 A.2d 246. If after the merger the shareholder of the merged corporation is not also a shareholder of the surviving corporation, his interest in the merged corporation's cause of action is in the same category as his interest in the other assets of the merged corporation, and the cause of action generally affects only the value of the shareholder's stock for appraisal purposes.

Some cases have expressed concern over the possibility that when the corporate cause of action is against directors or majority shareholders, the wrongdoers may insulate themselves from liability by means of a merger. See: *Holmes* v. *Camp*, (1919) 186 App. Div. 675, 175 N.Y.S. 349, affirmed 227 N.Y. 635, 126 N.E. 910; *Marco* v. *Sachs*, (1951) 201 Misc. 934, 109 N.Y.S.2d 226; *Platt Corp.* v. *Platt*, (1964) 21 A.D.2d 116, 249 N.Y.S.2d 75; *Miller* v. *Steinbach*, (S.D.N.Y. 1967) 268 F.Supp. 255; but c.f. *Bokat* v. *Getty Oil Co., supra*, hereinafter quoted. Since "nothing is lost by a merger of corporations," *W. H. McElwain Co.* v. *Primavera*, (1917) 180 App. Div. 288, 167 N.Y.S. 815, the possibility that corporate directors and majority shareholders may avoid liability because of a merger is minimized, inasmuch as the surviving corporation is usually entitled to enforce the claim. If on demand of its shareholders the surviving corporation elects not to pursue the cause of action acquired from the merged cor-

poration, the stockholders of the surviving corporation can exercise their derivative rights and assert the cause of action on behalf of the surviving corporation, *Arnstein* v. *Bethlehem Steel Corp.* (E.D.N.Y. 1937) 18 F.Supp. 916. And when the shareholders of the merged corporation are made shareholders of the surviving corporation by reason of the merger agreement, they may assert the cause of action in a suit derivative of their stockholder status in the surviving corporation, *Niesz* v. *Gorsuch,* (9th Cir. 1961) 295 F.2d 909; *Platt Corp.* v. *Platt, supra.*

Although a shareholder of the merged corporation is generally precluded from litigating a cause of action which has passed to the surviving corporation, there are equitable limitations upon a surviving corporation's right to succeed to a merging corporation's cause of action. Among these limitations is the equitable doctrine that a corporation may not assert a claim if none of its shareholders would be entitled to assert the claim in a derivative action, *Platt Corp.* v. *Platt, supra; Capitol Wine & Spirits Corp.* v. *Pokrass,* (1950) 277 A.D. 184, 98 N.Y.S.2d 291. In *Home Fire Insurance* v. *Barber,* (1903) 67 Neb. 644, 93 N.W. 1024, 60 L.R.A. 927, Commissioner Roscoe Pound wrote, "If they have no standing in equity to entitle them to the relief sought for their benefit, they cannot obtain such relief through the corporation or in its own name. It would be a reproach to courts of equity if this were not so."

Thus, if none of the shareholders in the surviving corporation would be entitled to bring a derivative action to enforce the merged corporation's cause of action, because each had participated in the wrong complained of, the surviving corporation itself is not entitled to bring the action. The aforementioned danger of wrongdoers escaping liability through merger obviously is the greatest when the surviving corporation cannot assert the claim.

The court in *Bokat* v. *Getty Oil Co., supra,* recognized this problem, but stated:

"If a proposed merger is sought to be used for the coverup of wrongful acts of management, a Court of Equity in an action making a direct attack on the merger can and will protect the innocent stockholder victim."

The danger may be independent of the bona fides of the merger itself, however. Obviously, if a merger is effected solely for the purpose of shielding wrongdoers from liability, the merger may be attacked as devoid of a legitimate corporate purpose.

When a merger is justified, its legitimacy has no relevance to the problem of a wrongdoer's avoidance of liability. But, since no wrong should be without a remedy a Court of Equity may grant relief, pro-rata, to a former shareholder, of a merged corporation, whose equity was adversely affected by the fraudulent act of an officer or director and whose means of redress otherwise would be cut off by the merger, if there is no shareholder of the surviving corporation eligible to maintain a derivative action for such wrong and said shareholder had no prior opportunity for redress by derivative action against either the merged or the surviving corporation.

Givan, C.J. and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported at 370 N.E.2d 345.