[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 12, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-12459
Non-Argument Calendar

_____

D. C. Docket No. 05-1012-CV-JOF

JOHN R. HANTZ,
MICHAEL REID, et al.,

Plaintiffs-Appellants,

versus

PHILLIP BELYEW,
T. WAYNE DAVIS, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 12, 2006)

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Plaintiffs, John R. Hantz, Michael Reid, Michael Lacombe, Mark Drouillard,

and Orison Chaffee appeal from the district court's dismissal of their suit against Defendants, Phillip Belyew, T. Wayne Davis, Derek E. Dewan, Ford G. Pearson, General Electric Company, General Electric Capital Corporation, and Transit Group, Inc. The plaintiffs are members of an investment group that formerly held stock in Transit Group. They allege derivative actions for breach of fiduciary duty and conspiracy to breach fiduciary duty, as well as a direct action for fraud.

The district court identified a number of defects in plaintiff's amended complaint. The court found: 1) that plaintiffs were not shareholders of Transit at the time the suit was brought, and thus do not have standing to pursue a derivative suit, 2) that plaintiffs' fraud claim is not a direct claim, and thus must be dismissed with the derivative claims, 3) that the fraud claim is pleaded with insufficient particularity, and 4) that each of plaintiffs' claims are precluded by Transit's bankruptcy action. Because we agree that plaintiffs do not have standing to bring derivative claims, and that each claim alleged in the amended complaint is derivative, it is unnecessary to review the district court's final two findings.

## I.

The district court found that plaintiffs were not shareholders of Transit at the time they brought suit, and therefore did not have standing to pursue derivative claims. We review a dismissal for lack of standing *de novo*. Wright v. Dougherty

County, 358 F.3d 1352, 1354 (11th Cir. 2004).

Under both federal and Florida law, a plaintiff bringing a shareholder derivative suit must be a shareholder when the action was brought and throughout the course of the litigation. Schilling v. Belcher, 582 F.2d 995, 999-1000 (5th Cir. 1978);[1] Timko v. Triarsi, 898 So. 2d 89, 91 (Fla. Dist. Ct. App. 2005) (finding that the plaintiff in a shareholder derivative suit "must meet the common law requirement of continuous ownership throughout the pendency of the suit"). Both parties agree that Transit's reorganization in Chapter 11 proceedings eliminated plaintiffs' common stock. Therefore plaintiffs do not meet the requirement of continuous stock ownership.

The plaintiffs ask this Court to recognize an exception to the rule of continuous ownership where the loss of stock is involuntary. They cite numerous cases from other jurisdictions concerning individuals who sought to challenge the propriety of mergers in which they lost their shareholder rights. See, e.g., In re General Instruments Corp., 23 F. Supp. 2d 867, 872 (N.D. Ill. 1998); Eastwood v. National Bank of Commerce, 673 F. Supp. 1068, 1077 (W.D. Okla. 1987); Arnett v. Gerber Scientific, Inc., 566 F. Supp. 1270, 1273 (S.D.N.Y. 1983); Lewis v.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), we held that all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit.

Ward, 852 A.2d 896, 902 (Del. 2004); Noakes v. Schoenborn, 841 P.2d 682, 685 (Ore. App. 1992); Gaillard v. Natomas, Co., 173 Cal. App. 3d 410, 421 (1985); Gabhart v. Gabhart, 370 N.E.2d 345, 358 (Ind. 1977).  The plaintiffs argue that these cases establish that a shareholder who loses his stock involuntarily is not subject to the continuous ownership requirement.  Schilling did involve a plaintiff who voluntarily sold his stock,  582 F.2d at 996.  While these plaintiffs unwillingly lost their common stock when the Bankruptcy Court confirmed Transit's reorganization plan.

If this issue turned on voluntariness, plaintiffs' analogy might be apt, but involuntariness alone cannot justify an exception to Fed. R. Civ. P. 23.1.  Rule 23.1 follows the principle that "[o]nly a shareholder, by virtue of his proprietary interest in the corporate enterprise," has sufficient interest in the well-being of the corporation to sue on its behalf.  Schilling, 582 F.2d at 999 (internal quotation marks omitted).  Plaintiffs who lose their shares involuntarily have no greater interest in the continued well-being of a corporation than plaintiffs who willingly sell their shares.  Neither class of plaintiff retains a proprietary interest in the corporate enterprise.

The cases that plaintiffs cite turn on redressability.  They serve the need to prevent a particular form of injustice where the directors of a corporation divest

4

shareholders of their stock via merger in order to insulate the directors' conduct from judicial review. See, e.g., Arnett, 566 F. Supp. at 1273 ("As to common sense, it is obvious that to deny plaintiff-shareholders standing in cases such as this would insulate defendants from liability whenever defendants can consummate a short-form merger without plaintiffs' knowledge and without any opportunity for plaintiffs to obtain an injunction against it."). That is not the situation here. The defendants did not leave the plaintiffs without a forum. Transit's bankruptcy proceedings provided the plaintiffs with an adversarial proceeding in which to air their grievances.

The plaintiffs argue that this case is analogous to the merger cases because the defendants used the bankruptcy proceeding itself to deprive the plaintiffs of their interest in the corporation. They allege that Transit fraudulently promised to implement plaintiffs' reorganization plan, but instead adopted GE's proposal. One problem with this argument is that Transit's board of directors voted to adopt GE's reorganization plan on April 19, 2001. The bankruptcy court did not extinguish plaintiffs' stock until November 27, 2002. This gap in time left plaintiffs with more than a year to contest GE's proposal. Thus plaintiffs would not fall within a new redressability exception to either Fed. R. Civ. P. 23.1 or Florida law anyway, so there is no need to determine if such an exception exists.

5

**II.**

Plaintiffs contend that their fraud claim is direct, rather than derivative. If so, it is not subject to the requirement of continuous stock ownership and thus avoids the standing problem that sinks their other claims. The district court disagreed with plaintiffs, finding that the gravamen of the fraud claim is derivative. We review *de novo* the district court's application of the law to the facts. United States v. Poirier, 321 F.3d 1024, 1033 (11th Cir. 2003).

State law determines whether a cause of action is direct or derivative. 7547 Corp. v. Parker & Parsley Development Partners, L.P., 38 F.3d 211, 221 (5th Cir. 1994). Georgia applies the law of the state of incorporation to derivative actions, see O.C.G.A. § 14-2-747, and Transit is incorporated in Florida, which uses the gravamen test to distinguish between direct and derivative claims. See e.g., Citizens National Bank v. Peters, 175 So. 2d 54 (Fla. Dist. Ct. App. 1965). Under the gravamen test, "a stockholder may bring a suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders." Id. At 56. If, however, the injury is "*primarily* against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation." Id. (emphasis added); see also Alario v. Miller, 354 So. 2d 925, 926

(Fla. Dist. Ct. App. 1978).

Under this test, there is little question that plaintiff' claim is derivative. As the district court documents in great detail, nearly all of the allegations in Plaintiffs' fourteen paragraph fraud claim refer to misbehavior detrimental to all of Transit's shareholders, not just plaintiffs. The exception is plaintiffs' allegation that defendants encouraged them to waste time and resources devising a restructuring plan that Transit's Board of Directors never intended to implement. These expenses are a small fraction of the total loss to the shareholders from Transit's bankruptcy. We believe that the district court correctly concluded that the fraud claim is for injuries that primarily were suffered by the corporation, and is therefore derivative. Because plaintiffs have no standing to pursue their claims, we do not reach the remaining allegations of error.

**AFFIRMED.**