## The NATIONAL BOARD OF EXAMINERS FOR OSTEOPATHIC PHYSICIANS AND SURGEONS, INC. d/b/a National Board of Osteopathic Medical Examiners, Inc., and the National Board of Osteopathic Medical Examiners, Inc., and Joseph H. Hogsett, as Secretary of State of the State of Indiana, Appellant–Defendants,

v.

## AMERICAN OSTEOPATHIC ASSOCIATION, Appellee–Plaintiff.

### No. 49A04–9307–CV–263.

Court of Appeals of Indiana, Fourth District.

Dec. 27, 1994.

Sydney L. Steele, Constance J. Goodwin, Lowe Gray Steele & Hoffman, Indianapolis, for appellants.

James A. McDermott, Peter J. Rusthoven, Timothy R. Renfroe, Barnes & Thornburg, Indianapolis, Michael C. Cook, Robert B. Baker, Dennis J. McEleney, McCullough Campbell & Lane, Chicago, IL, for appellee.

## OPINION

CHEZEM, Judge.

### Case Summary

Appellant-defendant,[1] NBOME, appeals the decision of the trial court to grant partial summary judgment in favor of appellee-plaintiff, the American Osteopathic Association ("AOA"). We affirm.

### Issues

NBOME presents three issues for review:, which we restate as:

I. Whether the AOA has standing to bring an action for judicial enforcement of certain provisions of Indiana NBOME's articles of incorporation and bylaws;

II. Whether Indiana NBOME's actions in attempting to accept the provisions of the 1971 Act were effective, and whether those actions eliminated the AOA's approval rights; and

III. Whether Indiana NBOME's merger with Illinois NBOME was effective to eliminate the AOA's approval rights.

---

1. The appellants-defendants in this action, the National Board of Examiners for Osteopathic Physicians and Surgeons, Inc. d/b/a the National Board of Osteopathic Medical Examiners, Inc., an Indiana nonprofit corporation ("Indiana NBOME"), and the National Board of Osteopathic Medical Examiners, Inc., an Illinois nonprofit corporation ("Illinois NBOME"), will be collectively referred to as "NBOME," unless separate reference is necessary.

*Facts and Procedural History*

The AOA is the national association of the osteopathic medical profession in the United States. In the early 1930's, the AOA established an unincorporated association originally known as the National Board of Osteopathic Examiners, and later called the National Board of Examiners for Osteopathic Physicians and Surgeons (the "NBOME Predecessor"). The purpose of the association was to develop and administer a licensing examination for the osteopathic medical profession and to encourage recognition of such an examination for the licensing of osteopathic physicians in the several states.

The AOA prepared the NBOME Predecessor's constitution and bylaws in 1933, and elected its initial board of directors in 1934. A condition of the AOA's founding of the NBOME Predecessor was that the AOA would have approval rights over both the selection of the association's board and any changes in its governing documents.

For seventeen years, the NBOME Predecessor operated as an association. Indiana NBOME was incorporated on July 11, 1951, under the Indiana General Not-for-Profit Corporation Act of 1935, Ind.Code §§ 23–7–1–1 et seq. (the "1935 Act"). The stated purpose of Indiana NBOME, as set out in its articles of incorporation, was "[t]o acquire the assets and assume the liabilities of an existing voluntary association known as The National Board of Examiners for Osteopathic Physicians and Surgeons." R. at 30. Indiana NBOME's articles of incorporation and bylaws also expressly reserved to the AOA the right to approve nominations to Indiana NBOME's board and amendments to its articles and bylaws.

At all times up until 1991, the NBOME Predecessor and Indiana NBOME complied with the provisions of their governing documents which permitted the AOA to exercise approval rights over board membership. From 1934 until 1991, the AOA exercised those rights. In addition, before 1991, the NBOME Predecessor and Indiana NBOME sought approval from the AOA when amending either their articles of incorporation or bylaws.

On July 17–18, 1991, the AOA Board of Trustees met to consider certain amendments to Indiana NBOME's bylaws submitted by its board. The proposed amendments would have eliminated the AOA's approval rights over nominations to Indiana NBOME's board. The AOA disapproved of the proposed amendments. On the next day, · the AOA Board of Trustees met with Dr. Eugene Mochan, immediate past-president of Indiana NBOME. Dr. Mochan informed the Board of Trustees of Indiana NBOME's concern that it was being perceived as not autonomous from the AOA. Dr. Mochan noted that a special joint task force of the AOA and Indiana NBOME would meet to address this issue.

However, Indiana NBOME's board had already voted to pursue severing its connection with the AOA. On May 11, 1991, the board had adopted a resolution that Indiana NBOME was to be made an autonomous examining board. In furtherance of that resolution, Indiana NBOME's board had drafted articles of incorporation for an Illinois non-profit corporation, the Illinois NBOME, which did not include the AOA's approval rights. Those articles were executed on July 15, 1991.

On October 1, 1991, the AOA notified Indiana NBOME of its disapproval of the proposed bylaw amendments which would have eliminated its right to approve nominations to Indiana NBOME's board. On October 10, 1991, Indiana NBOME filed with the Secretary of State of Illinois those articles of incorporation which had been executed on July 15, 1991, and which did not include provisions giving the AOA approval rights over either Illinois NBOME's board members or changes to its articles or bylaws.

On October 26, 1991, Indiana NBOME's board and its members, who were the same individuals, met to review and sign the necessary documents to effectuate its earlier resolution to become an autonomous organization. The board adopted a resolution to accept the provisions of the Indiana Not-for-Profit Corporation Act of 1971, Ind.Code §§ 23–7–1.1–1 et seq. (the "1971 Act"). As part of its acceptance of the 1971 Act, the board also adopted a restatement of its articles of incor-

poration. The restated articles did not include those provisions which had granted the AOA approval rights over Indiana NBOME's board members and changes to the articles and bylaws. The restated articles were approved by Indiana NBOME's members. Lastly, pursuant to the 1971 Act, the boards of both Indiana NBOME and Illinois NBOME, who again were comprised of the same individuals, approved a merger of Indiana NBOME into Illinois NBOME.

The corporate documents reciting Indiana NBOME's acceptance of the 1971 Act and its restatement of its articles of incorporation were filed with the Secretary of State of Indiana on December 31, 1991. The corporate documents reciting Indiana NBOME's merger into Illinois NBOME were filed with the Secretary of State of Indiana on January 12, 1992, and with the Secretary of State of Illinois on February 18, 1992.

On August 3, 1992, Illinois NBOME elected board members without the AOA's approval of the nominations.

On October 8, 1992, the AOA filed suit against Indiana NBOME and Illinois NBOME (collectively "NBOME"), seeking a declaratory judgment that the AOA's approval rights are valid and enforceable, and that the actions of the defendants which purported to extinguish those rights were of no force and effect. NBOME filed its motion to dismiss and for summary judgment on November 20, 1992. NBOME moved to dismiss the complaint arguing that the AOA had no standing to challenge the actions of either Indiana NBOME or Illinois NBOME. NBOME moved for summary judgment arguing that the corporate actions of accepting the 1971 Act and the subsequent merger were entirely proper and legal under both Indiana and Illinois law. A hearing was conducted on the motions on February 3, 1993. On April 15, 1993, the trial court denied NBOME's motions to dismiss and for summary judgment, and instead granted summary judgment for the AOA pursuant to T.R. 56(B). NBOME appeals.

### Discussion and Decision

### Summary Judgment

The trial court granted summary judgment for the AOA. Prior to the amendment of Trial Rule 56, this court would engage a broad standard of review upon the appeal of a grant of summary judgment. When reviewing the disposition of a summary judgment motion, this court stood in the same position as the trial court. *Rambo v. Cohen* (1992), Ind.App., 587 N.E.2d 140, *reh'g denied, trans. denied.* We would review the pleadings, affidavits, depositions, admissions, interrogatories, testimony, and any materials contained in the record to determine if the trial court properly decided that there were no genuine issues of material fact and that the prevailing party was entitled to judgment as a matter of law. *Stackhouse v. Scanlon* (1991), Ind.App., 576 N.E.2d 635, *trans. denied.* Even absent a material issue of fact, summary judgment would be affirmed if it was sustainable on any theory or basis found in the record. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154.

Effective January 1, 1991, our supreme court amended Trial Rule 56. The relevant parts of the amended rule now provide:

**(C) Motion and Proceedings Thereon.**
... At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. A party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto. The judgment shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.... Summary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the evidentiary matter designated to the court.

\* \* \* \* \* \*

**(H) Appeal–Reversal.** No judgment rendered on the motion shall be reversed on

the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court.

Our supreme court recently discussed its amendments to Trial Rule 56 in the opinion of *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434. There, the court stated:

> No longer can parties rely without specificity on the entire assembled record-depositions, answers to interrogatories, and admissions—to fend off or support motions for summary judgment. It is not within a trial court's duties to search the record to construct a claim or defense for a party. *Babinchak v. Town of Chesterton* (1992), Ind.App., 598 N.E.2d 1099, 1101 ("It is clear from ... amended [T.R. 56] that a court may not search the record when making a decision about [a] motion" for summary judgment.).
>
> To promote the expeditious resolution of lawsuits and conserve judicial resources, T.R. 56(C) now requires each party to a summary judgment motion to *"designate* to the court *all parts* of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." [footnote omitted]. In addition, the opposing party must designate to the trial court "each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto." T.R. 56(C). The trial court must enter summary judgment if the *"designated evidentiary matter* shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (emphasis added).
>
> Our 1991 amendments also prohibit appellate courts from reversing summary judgment orders on the ground that there is a genuine issue of material fact unless the material facts and the relevant evidence were *specifically designated* to the trial

court. T.R. 56(H). In applying this new standard of review, Judge Miller has observed that "T.R. 56(H) was specifically added to further impress upon us, as the reviewing court, the need for the parties to strictly comply" with the designated evidentiary matter requirement of amended T.R. 56(C). *Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411.

(emphasis in original).

Even though the supreme court's discussion in *Rosi* seems clear regarding the effect of the T.R. 56 amendments, this court has continued to grapple with exactly how parties are to designate evidence to the trial court as required by the rule.

Shortly after the *Rosi* decision, the Fourth District of this court handed down companion cases discussing the designation requirement of T.R. 56. *See Keating v. Burton* (July 28, 1993),[2] Ind.App., 617 N.E.2d 588, *reh'g denied, trans. denied,* and *Pierce v. Bank One–Franklin, N.A.* (July 28, 1993), Ind.App., 618 N.E.2d 16, *trans. denied.* In those cases, this court attempted to give guidance to litigants as to how to designate materials to the trial court. We suggested that:

> "the better practice is [for parties] to clearly and succinctly state the factual issues and the pertinent parts of the record which are directly relevant to those issues in their *motions* or *responses,* not necessarily in the supporting *briefs....* In short, a party should file a list of the factual matters which are or are not in dispute, a specific designation to their location in the record, and a brief synopsis of why those facts are material."

*Pierce* at 19.

In *Graham v. Vasil Management Co.* (Aug. 19, 1993), Ind.App., 618 N.E.2d 1349, *reh'g denied,* the defendants moved for summary judgment yet they did not designate any evidentiary material. Trial court, nevertheless, searched the entire record and granted summary judgment for defendants. On appeal, this court reversed stating that the trial court erred in granting summary

2. For purposes of our discussion here, we are including in our citations the exact date on which the cases were handed down.

judgment when there was no evidence designated by the movant.

In *Vogler v. Dominguez* (Nov. 30, 1993), Ind.App., 624 N.E.2d 56, 58, *reh'g denied, trans. denied,* without discussing the issue any further, this court stated "[t]he identification of material facts and relevant evidence contained in appropriate T.R. 56(C) supporting materials through a *summary judgment brief* complies with the designation requirement of T.R. 56(C)." (emphasis supplied).

In *Mid State Bank v. 84 Lumber Company* (Feb. 28, 1994), Ind.App., 629 N.E.2d 909, the plaintiff moved for summary judgment and attached to the motion an affidavit which made specific reference to three exhibits which had been made a part of the complaint. The trial court granted summary judgment. On appeal, defendant argued that the trial court improperly granted summary judgment because the plaintiff had failed to properly designate materials in accordance with T.R. 56(C). This court disagreed, stating:

> There is no particular form a party must use in order to meet the designation requirement. It is true that the better practice for both parties is to clearly and succinctly state the material factual issues and pertinent parts of the record relevant to those factual issues in the actual motion for summary judgment or response to the motion. *Keating v. Burton* (1993), Ind. App., 617 N.E.2d 588, 591, *trans. denied. However, as long as the trial court is apprised of the specific material on which the parties rely either in support of or in opposition to the motion then the designation requirement has been met. See, e.g. Czaja v. City of Butler* (1992), Ind.App., 604 N.E.2d 9 (designation requirement of T.R. 56 met through oral presentation at the hearing on the motion for summary judgment); *Babinchak v. Town of Chesterton* (1992), Ind.App., 598 N.E.2d 1099, *reh'g denied* (material specifically mentioned in summary judgment brief consid-

ered sufficient to satisfy T.R. 56 designation requirement).

In the case before us [plaintiff] did not file a pleading entitled "Designated Materials." However, it is abundantly clear to the trial court that [plaintiff] was specifically relying on its affidavits and exhibits attached to its Complaint to support its summary judgment motion.... [Plaintiff's] Affidavit and exhibits along with [Defendant's] designation of pleadings and material issues of fact comprise the entire record for appellate review.

(emphasis added).

In *Kissell v. Vanes* (Feb. 28, 1994), Ind. App., 629 N.E.2d 878, decided on the same day as *Mid State Bank,* defendants filed a motion for summary judgment and an accompanying brief. Defendants' motion did not designate any evidence in support of their position, and their brief made only "cursory references to discovery materials." *Kissell* at 880. The trial court granted summary judgment. On appeal, this court reversed stating that the trial court could not grant summary judgment when there was no designation of evidence by the movant.[3]

In *Dzvonar v. Interstate Glass Company* (March 29, 1994), Ind.App., 631 N.E.2d 516, *reh'g denied, trans. denied,* the defendant moved for summary judgment. In its motion and supporting brief, the defendant designated the entire complaint, answer, and three affidavits. The trial court granted summary judgment. On appeal, this court held that the defendant's designation was insufficient, as it did not provide "any specific citations as to where evidence supporting [defendant's] assertions could be found in the mentioned materials." *Id.* at 518.

In *Swan v. TRW, Inc.* (May 31, 1994), Ind.App., 634 N.E.2d 794, *trans. denied,* the defendant moved for summary judgment. In its motion, the defendant designated the pleadings and a deposition. In its supporting brief, the defendant provided specific cita-

---

**3.** Two judges concurred in the result in *Kissell,* expressly disagreeing with the writing judge's analysis of T.R. 56(C). The opinion concurring in result argued that although the trial court could have denied the summary judgment motion because of the movant's failure to designate materials, T.R. 56 does not prohibit a court from resolving the motion on the merits if the movant fails to designate specific materials. The opinion also expressly disagreed with *Graham v. Vasil Management Co., supra*

tions to portions of the deposition in support of the motion. The plaintiff filed a response to the motion and a supporting brief which also contained specific citations to portions of the deposition. The trial court granted summary judgment. On appeal, this court stated that the parties did not follow the recommended format in designating materials pursuant to Ind.Trial Rule 56(C). However, we declined to reverse, "[b]ecause the trial court was apparently apprised of the specific material on which the parties relied either in *support of or in opposition to the summary judgment motion[.]*" *Id.* at 796, n. 1. We held that the parties had substantially complied with the designation requirement, but cautioned that to avoid possible adverse rulings in the future, counsel should strictly comply with the designated evidentiary matter requirement of T.R. 56(C).[4]

In *Cloverleaf Apartments, Inc. v. Town of Eaton* (Oct. 24, 1994), Ind.App. 641 N.E.2d 665, the defendants moved for summary judgment. Along with their motion, the defendants filed "a designation of evidence in support of its Motion for Summary Judgment including a deposition and two affidavits together with supporting materials." *Id.* at 666–67. The plaintiffs did not file a brief in opposition to the motion until the day of the summary judgment hearing, three and one-half months later. The trial court granted the motion. This court held that the response to the summary judgment motion, which is required by the trial rule to be filed within 30 days after service of the motion, includes that party's designation of evidence. Untimely filing of the response permits the trial court to exclude consideration of the response.

■ A review of the above cases, and many others, leads without much difficulty to the conclusion that there is a lack of consensus within both the bench and bar as to what must be done to designate evidentiary materials to the trial court in support of or in opposition to a motion for summary judgment. From the *Rosi* decision up until now, the opinions of this court have seemingly

taken a more narrow approach as to what the rule requires. Yet, such an approach is not apparent from the language of the rule itself. The rule does not require a separate filing called a "designation." Indeed, the noun "designation" appears nowhere in the rule. What the rule requires is that the parties perform an action—"to designate" evidentiary material in support or opposition of the motion. Some of our earlier holdings suggest that the evidentiary materials must be designated in a certain manner. However, we believe the language of the rule itself permits the parties to determine how to designate. What the rule requires is specificity, and we do not mean to suggest that we are relaxing that requirement. Subsection (H) of T.R. 56 prohibits this court from reversing a case because there is a genuine issue of material fact unless that fact has been "specifically designated" to the trial court. Thus, specificity is the mandate, and we agree with those cases which have held that the failure to make specific citations does not comply with the rule. *Dzvonar, supra.* Our holding is simply that how a party is to specifically designate material is not mandated by the rule. Whether the parties designate to the court in the summary judgment motion itself, in a separate filing which designates the material, or in a brief in support of (or in opposition to) the motion is within their discretion. As long as the trial court is apprised of the *specific material* upon which the parties rely in support of or in opposition to a motion for summary judgment, then the material may be considered.

■ In this case, NBOME moved for summary judgment. NBOME filed with the trial court a motion for summary judgment, a separate filing entitled "Designation of Materials in Support of Motion for Summary Judgment," and an accompanying brief. NBOME's separate "designation" filing designated two affidavits and the articles of incorporation of the AOA. NBOME's supporting brief provided page and paragraph-specific citations to those parts of the affida-

---

4. One judge dissented in *Swan,* noting that the majority opinion is seemingly inconsistent because it upholds the grant of summary judgment partly on the basis that the plaintiffs failed to designate, even after the majority had held that the parties had substantially complied with the designation requirement.

vits and articles that supported its motion. NBOME complied with T.R. 56(C) because it has specifically designated material in support of its motion.

We think it imperative to point out, though, that NBOME's "designation" filing, standing alone, does not comply with the rule. This is not because of its separate status, but because it does not provide specific citations. A party must designate those '*parts* of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion.' *Rosi, supra,* (citing T.R. 56(C)). NBOME's "designation" filing does not do so. However, NBOME has complied with the rule because it has designated those parts in its supporting brief. By further way of illustration, if it were the case that those parts of the pleadings that NBOME specifically designated in its brief would not support a reversal, yet there was material identified in NBOME's "designation" that would, this court would still be prohibited by T.R. 56(H) from reversing because that material supporting reversal was not *specifically* designated to the trial court. *See e.g., Marshall v. Blue Springs Corporation* (1994), Ind.App., 641 N.E.2d 92 (defendants' general designation of material in their summary judgment motion was insufficient because of its lack of specificity; however, defendants' accompanying brief did list specific page citations). In practical effect, in this case, NBOME's "designation" filing did not add anything. While we express no opinion on whether parties should file such a separate pleading, we again emphasize that what the rule requires is specificity. If the trial court is apprised of the specific material upon which the party relies in support of its motion, no matter what the manner, then there is no error.[5]

The AOA's response to the summary judgment motion is similar. The AOA filed a "Designation of Record Items" in response to the motion and an accompanying brief. In the separate filing, the AOA designated the complaint, the amended complaint, all those materials designated by NBOME, two affidavits, and four volumes of corporate minutes which total some two thousand pages. Also like NBOME, the AOA provided no specific citations to those parts of the material in the "designation," but did provide specific citations in its supporting brief. Thus, the AOA has complied with the rule because in its brief it "designated those parts of pleading" that support its position. T.R. 56(C). However, again, the AOA's "designation" filing here does little, and by itself is insufficient compliance with the rule because of its lack of specificity.

Because, the trial court was apprised of the specific parts of the evidentiary materials upon which both parties relied, summary judgment was an available disposition.

We now move on to consider the merits of the appeal.

### The AOA's Standing

 NBOME contends that summary judgment should not have been granted in favor of the AOA, and that summary judgment should have been granted in its favor, because the AOA has no standing to enforce the approval rights[6] contained in Indiana NBOME's articles of incorporation and by-laws. It is important to note what NBOME does not contend. NBOME does not contend that the approval requirements are either invalid or unenforceable.[7] Rather, NBOME's argument is directed *to whom* may enforce the approval requirements.

---

5. Under all circumstances, the parties are required to comply with the time requirements of T.R. 56. See *Cloverleaf Apartments, Inc. v. Town of Eaton, supra.*

6. NBOME vehemently argues in both its appellant's brief and reply brief that calling the provisions "approval rights" merely begs the question of whether the AOA has a right to enforce those provisions. We disagree that calling the provisions approval rights begs the standing question. In fact, that label seems to be the most accurate

label to be placed on those provisions given what they do, that is grant the AOA the power to approve board nominations and rule changes.

7. NBOME did argue to the trial court that the approval rights were invalid and unenforceable because they were not expressly authorized by the 1935 Act. The trial court held otherwise, finding that third-party approval provisions were not in contravention of the 1935 Act. NBOME does not appeal this finding.

NBOME argues that corporate governing provisions are for the exclusive benefit of the corporation, and as such, can only be enforced by a member, director, or officer of the corporation. NBOME contends that because the AOA is not, nor has it ever been, a member, director or officer of Indiana NBOME, the AOA is not a proper party to enforce the provisions and therefore has no legal standing to bring this action.

■ The articles of incorporation and bylaws of a nonprofit corporation constitute a contract between the state and the corporation, the corporation and its members, and the members among themselves. *Orchard Ridge Country Club, Inc. v. Schrey* (1984), Ind.App., 470 N.E.2d 780. *See also Brenner v. Powers* (1992), Ind.App., 584 N.E.2d 569, 574, *reh'g denied, trans. denied* ("the articles of incorporation and bylaws of a not-for-profit corporation are generally considered to be a form of contract between the corporation and its members and among the members themselves"). That a corporation's organizational documents constitute a contract is a fundamental principle of all corporate law, whether the business be for-profit or not-for-profit. *See e.g., Scott v. Anderson Newspapers, Inc.* (1985), Ind.App., 477 N.E.2d 553, 558 ("[t]he relation between a corporation and its stockholders is one of contract in which the articles of incorporation, by-laws, provisions of the stock certificate, and pertinent statutes are embodied").

■ When determining what rights are created by corporate organizational documents, Indiana courts have routinely applied the general rules governing contract interpretation and enforcement. *Scott, supra.* Furthermore, as with any contract, a nonprofit corporate charter can create rights that would not exist absent the contract, including rights affecting the exercise of corporate powers. Our supreme court long ago recognized the following:

> Whatever may be the rule where the charter does not provide a mode of exercising corporate power, it is quite clear that where the charter does prescribe the mode it must be followed, even though it requires a procedure different from the one prescribed by a general rule of law.

*Presbyterian Mut. Assur. Fund v. Allen* (1886), 106 Ind. 593, 596, 7 N.E. 317, 319.

Indiana NBOME's articles of incorporation and bylaws constitute a contract. The relevant provisions of that contract granted to the AOA approval rights over Indiana NBOME board nominations and proposed changes to the articles and bylaws. Thus, Indiana NBOME's articles and bylaws created corporate governance rules different from those that would have applied absent those contractual provisions. While any member of the Indiana NBOME can seek enforcement of the corporate governance rules, so can a non-member who has been specifically granted rights by the charter.

The enforceability of charter provisions creating third-party corporate governance rights was acknowledged by this court in *Lozanoski v. Sarafin* (1985), Ind.App., 485 N.E.2d 669, *reh'g denied, trans. denied.* There, a nonprofit church had incorporated under the 1971 Act, incorporating by reference the preexisting-existing parish bylaws into the charter. This court upheld the validity of a non-member's action under both the 1971 Act and the corporation's charter. We reasoned that nonprofit organizational documents are considered to be a contract; that the 1971 Act permitted directors to be removed in any manner provided by the articles; and that the Act also vested the power to make or amend the bylaws in the directors unless otherwise provided in the articles. We also specifically noted the 1971 Act authorized bylaws to contain "any provision for the regulation and management of the affairs of the corporation not inconsistent with the article of incorporation and the laws of this state, ..." *Id.* at 671. While acknowledging that the charter provisions left much to be desired in their manner of expression, the Court found that the plain intent of the corporate charter was "that the corporate body be governed as a part of the national church." *Id.* at 672. That intent was enforced by giving effect to the charter and bylaw provisions vesting ultimate governance authority in the non-member bishop. *Id.* at 671–72. Indeed, the non-member bishop's actions were upheld even though his suspension of membership meetings appeared to

conflict with the statutory requirement for annual membership meetings of nonprofit corporations.

We also agree with the trial court's holding that the AOA has the right to seek enforcement of the approval rights because the AOA is a third-party beneficiary to Indiana NBOME's corporate charter. Under Indiana law, one who is not a party to a contract may enforce the contract by demonstrating that they are a third-party beneficiary. *OEC–Diasonics, Inc. v. Major* (1993), Ind.App., 622 N.E.2d 1025, 1032, *reh'g denied.* A third-party beneficiary contract exists when (1) the parties intend to benefit a third party; (2) the contract imposes a duty on one of the parties in favor of the third-party; and (3) the performance of the terms of the contract renders a direct benefit to the third party intended by the parties to the contract. *Tonn & Blank, Inc. v. Board of Com'rs of LaPorte County* (1990), Ind.App., 554 N.E.2d 827, 828, *trans. denied.* Among these three factors, the intent of the contracting parties to benefit the third-party is the controlling factor. *Barth Elec. Co. v. Traylor Bros., Inc.* (1990), Ind.App., 553 N.E.2d 504, 506. Such an intention may be demonstrated by specifically naming the third-party, or by other evidence. *Id.* The intent necessary to the third-party's right to sue is not a desire or purpose to confer a particular benefit upon the third-party nor a desire to advance his interest or promote his welfare, but an intent that the promising party or parties shall assume a direct obligation to him. *Jackman Cigar Mfg. Co. v. John Berger & Son Co.* (1944), 114 Ind.App. 437, 447, 52 N.E.2d 363, 367.

NBOME argues that summary judgment was erroneously granted because there existed a genuine issue of material fact to be resolved by the fact-finder, that is, whether Indiana NBOME intended to confer a benefit upon the AOA by including the approval rights in Indiana NBOME's articles of incorporation and bylaws. However, as correctly noted by the AOA, review of this issue has been waived. *See Franklin Bank and Trust Co. v. Mithoefer* (1990), Ind., 563 N.E.2d 551.

In *Franklin Bank,* our supreme court stated that a party may not change its theory of the case on appeal and argue an issue which was not properly presented to the trial court. The court held that in moving for summary judgment and alleging that there were no factual issues necessary for resolution, the bank had waived the argument that there were factual issues precluding an entry of summary judgment.

This is the case here. NBOME's motion for summary judgment, which by definition carries an allegation that there are no genuine issues of material fact, precludes NBOME from now asserting that factual issues precluded an entry of summary judgment. Nevertheless, even despite waiver, we disagree with NBOME's characterization that there was a factual issue.

The question of the enforceability of third-party beneficiary rights, as discussed earlier, is satisfied by the language of Indiana NBOME's articles of incorporation and bylaws. The AOA is specifically named as a third-party having approval rights over board nominations and proposed amendments to the articles and bylaws. The corporate documents impose a duty upon Indiana NBOME to obtain AOA approval before electing any board members or adopting any amendment upon Indiana NBOME and its members. As the trial court noted, the performance of that duty renders to the AOA something it considers to be a direct benefit—ensuring that the AOA has a degree of indirect input and influence with respect to the supervision and performance of NBOME testing and certification functions. More significantly, though, the inclusion of those provisions conferred an obligation on Indiana NBOME to perform a specific function in favor of the AOA, that is, obtain the AOA's approval over board nominations and amendment changes.

It is also clear that Indiana NBOME and the AOA intended the approval rights to be enforceable as both parties consistently acted in accordance with those provisions from 1934 until 1991. The authorities cited herein consistently emphasize the controlling importance of the intent of the parties as shown by the language of the contract. Moreover, in *Lozanoski, supra,* this court noted the importance of intent in the precise context of third-

party corporate governance rights. There, in upholding the enforceability of third-party corporate governance rights, this court emphasized that the plain intent of the corporate body was to be governed by a third-party, the national church. *Id.* at 672. Here, Indiana NBOME's articles of incorporation and bylaws expressly confer approval rights upon the AOA. Such intent is plain from the language of the charter, and is also evidenced by the conduct of the parties.

The trial court did not err in holding that the AOA had standing to seek judicial enforcement of the approval rights.

### Indiana NBOME's Acceptance of the 1971 Act

NBOME argues that the trial court's grant of summary judgment was erroneous because even if the AOA has standing to seek enforcement of the approval rights, those rights were eliminated when Indiana NBOME chose to accept the provisions of the Indiana Not-for Profit Corporation Act of 1971 (the "1971 Act"), and then restate its articles of incorporation. The trial court held that Indiana NBOME's actions were ineffective as a matter of law to eliminate the AOA's approval rights. The trial court specifically found that Indiana NBOME could not accept the 1971 Act beyond the date of its repeal, and that Indiana NBOME could not eliminate the AOA's approval rights by simply not including them in a restatement of the articles of incorporation.

Indiana NBOME first sought to eliminate the AOA's approval rights by accepting the provisions of the 1971 Act, and then deleting the approval rights in its required filing of restated articles of incorporation. Indiana Code § 23–7–1.1–37 provided that:

> Any corporation organized under the laws of this state for any purpose or purposes for which a corporation might be organized under this chapter may accept the provisions of this chapter, ...

And Indiana Code § 23–7–1.1–38(a) provided that:

> The board of directors or trustees of a corporation desiring to accept the provisions of this chapter may, by resolution

adopted by a majority of the board, approve articles of acceptance setting forth the following:

\* \* \* \* \* \*

> (6) a restatement of those provisions of its articles of incorporation or association which it desires to have continued in effect,

. . . . .

> The failure to restate such provisions in the articles of acceptance under subdivision (6) shall constitute nonconformance to law, and the secretary of state shall refuse to file the articles of acceptance.

On October 26, 1991, Indiana NBOME adopted a resolution to accept the provisions of the 1971 Act. On December 31, 1991, Indiana NBOME filed its articles of acceptance with the Indiana secretary of state. The trial court found that Indiana NBOME's action to accept the 1971 Act was legally ineffective because the 1971 Act had been repealed on August 1, 1991. We agree.

 In 1991, the Indiana General Assembly adopted a new nonprofit corporations act, the Indiana Nonprofit Corporation Act (the "1991 Act"). IC 23–17–1–1 et seq. The 1991 Act was modeled after the Revised Model Nonprofit Corporation Act. The 1991 Act had an effective date of August 1, 1991, and repealed the 1971 Act as of that date also. P.L.179–1991, Sec. 37, 34. Thus, after August 1, 1991, any entity seeking to incorporate in Indiana as a nonprofit corporation would be governed under the 1991 Act. However, the 1991 Act did not immediately apply to previously existing nonprofit corporations. Those previously existing nonprofit corporations which had incorporated under either the 1935 or 1971 Acts would not be mandatorily subject to the 1991 Act until August 1, 1993. IC 23–17–1–1(a). The 1991 Act did provide, however, that existing nonprofit corporations could voluntary opt-in to the provisions of the 1991 Act at anytime before it became mandatorily effective to them on August 1, 1993. IC 23–17–1–1(b).

NBOME argues that Indiana NBOME could have still accepted the provisions of the 1971 Act after its repeal date of August 1,

1991, because of the inclusion of an uncodified savings clause contained in the 1991 Act. The savings clause provides:

> [T]he repeal of [the 1971 Act] by this act does not affect the following:
>
> (1) The operation of [the 1971 Act] for an action taken under [the 1971 Act] before the repeal of [the 1971 Act], including the continuing validity of a domestic nonprofit entity's articles of incorporation, bylaws, or other organic documents, .., all as adopted by any domestic nonprofit entity before August 1, 1993, or an earlier date that an entity accepts the provisions of IC 23–27 [the 1991 Act], as added by this act, under IC 23–17–1–1(b).

P.L.179–1991, Sec. 36(a).

Contrary to NBOME's assertions, the savings clause does not permit a nonprofit corporation to accept the provisions of the 1971 Act at any time until August 1, 1993. What the savings clause does is declare that any acts of a nonprofit corporation taken under the 1971 Act before its repeal are of continuing validity. The savings clause provides that those corporate governance documents in effect as of August 1, 1991, shall continue in force until August 1, 1993, or an earlier acceptance date. The savings clause does no more than this.[8]

Thus, because Indiana NBOME could not have accepted the provisions of the 1971 Act after August 1, 1991, its attempt to do so was legally ineffective. Likewise, Indiana NBOME's restatement of its articles of incorporation filed as part of its purported acceptance was also ineffective.

■ The trial court also found that Indiana NBOME's restatement of its articles of incorporation could not have the effect of eliminating the AOA's approval rights. Again, we agree.

NBOME argues that Indiana NBOME could lawfully eliminate the approval rights

because the 1971 Act provides for the restatement "of those provisions of its articles of incorporation or association which it desires to have continued in effect." IC 23–7–1.1–38. NBOME contends that because Indiana NBOME no longer desired to have the AOA approval rights continued in effect, then they could be deleted as part of the restatement.

Authority to restate is not synonymous with authority to amend. Restatement authority does not permit substantive changes to be made to the articles of incorporation, but merely contemplates a "re-statement" in a single document of the original articles of incorporation and any previous amendments that have been made to them. If substantive amendments are desired to be made at the same time as the restatement, then those amendments must be approved according to the applicable corporate governance rules existing by statute or in the articles themselves. In other words, restatement authority does not permit a board of directors to end-run the normal requirements as set out in the articles of incorporation, for effecting substantive changes to the articles.

These propositions concerning the scope of restatement authority are supported by the present Indiana Nonprofit Corporation Act (the "1991 Act"), and other authority. Indiana Code § 23–17–17–8(b) provides that:

> A restatement may include amendments to the articles of incorporation. If the restatement includes an amendment requiring approval by the members or another person, the amendment must be adopted under section 5 of this chapter.

Indiana Code § 23–17–17–5(a)(3) provides:

> [a]n amendment to a corporation's articles of incorporation to be adopted must be approved ... [i]n writing by a person whose approval is required by a provision

---

8. NBOME's adamant belief that the savings clause permitted Indiana NBOME to accept the provisions of the 1971 Act even after it had been repealed may be precipitated by its misreading of the clause itself. NBOME argued to both the trial court and this court that the last part of the clause reads: "or an earlier date that an entity

accepts the provisions of I.C. 23–7–1.1 [the 1971 Act]." NBOME's appellate brief at 45–46; NBOME's memorandum in support of summary judgment, R. at 214. As noted, the savings clause actually states: "or an earlier date that an entity accepts the provisions of IC 23–17 [the 1991 Act]."

of the articles of incorporation authorized under section 1 of this chapter.

Indiana Code § 23–17–17–1 provides:

> Articles of incorporation may require an amendment to the articles of incorporation or bylaws to be approved in writing by a specified person other than the board of directors. The requirement may only be amended with the approval in writing of the person.

While these provisions of the 1991 Act had not yet applied to Indiana NBOME (Indiana NBOME had not chosen to opt-in to the 1991 Act before its mandatory effective date of August 1, 1993), they do provide authority for determining the proper scope of restatement authority in general.[9]

Contrary to NBOME's argument, the fact that Indiana NBOME no longer desired to have the AOA's approval rights continued in effect does not make those rights subject to deletion as part of a restatement.

### Indiana NBOME's Merger with Illinois NBOME

■ NBOME argues that the trial court's grant of summary judgment was erroneous because the AOA's approval rights were eliminated when Indiana NBOME merged into Illinois NBOME. NBOME contends that because Illinois NBOME's articles of incorporation did not contain any provisions requiring third-party approval over board nominations and amendments to the article and bylaws, NBOME, not the AOA, was entitled to judgment as a matter of law. The AOA contends that NBOME's attempt to eliminate the approval rights through the merger of Indiana NBOME and Illinois NBOME was legally ineffective under the cases of *Scott v. Anderson Newspapers, Inc.* (1985), Ind.App., 477 N.E.2d 553, and *Gabhart v. Gabhart* (1977), 267 Ind. 370, 370 N.E.2d 345.

In *Scott,* the governing documents of a corporation formed in a consolidation of two newspaper companies contained provisions requiring the separate election of a specified number of directors by a minority shareholder group and a majority group. In addition, the bylaws provided that there would always be directors in the same proportion from the two groups, and that "this particular section of these by-laws may not be changed except by the affirmative vote of 6/8 of all the outstanding stock of this corporation." *Scott,* 477 N.E.2d at 560. Long after the consolidation, the majority group proposed and purported to adopt amendments to the articles of consolidation and by-laws providing for all the corporation's business and affairs to be transacted by a simple majority vote of the stockholders or its directors. The majority defended this purported action by arguing that the Indiana corporations statutes authorized amendments "without limitation" by a simple majority vote. *Id.* at 560.

On appeal, this court disagreed. Applying standard contract law principles to the corporate organizational documents, we stated that "[t]he intent of the parties here is plain and unambiguous." *Id.* at 559. We held that the parties intent as expressed in those documents determined, for purposes of the corporate statutes governing shareholder voting rights, the identity of those shareholders entitled to vote in respect to any such amendment. *Id.* at 561. This court held that no amendments to require the consent of less that six-eighths of the shareholders could be

---

9. Also, the official comment to Section 10.06 of the Revised Model Nonprofit Corporation Act, of which IC 23–17–17–8 is its Indiana corollary, states as follows:

> Section 10.06 [IC 23–17–17–8] allows a corporation to restate its articles of incorporation without a member vote. Such restated articles are often useful, particularly where numerous amendments have been adopted over a period of years.
>
> Where the restated articles involve a change other than a change authorized by 10.02(a) [IC 23–17–17–4(a)], they should be submitted to the members, if any, for their approval.

> In some instances, it may be necessary to make grammatical and other minor changes between the original articles and the restated articles of incorporation. In these instances, the restated articles of incorporation should be submitted to the members for their approval. This approval may also require class voting and approval by third persons. See sections 10.04 [IC 23–17–17–6] and 10.30 [IC 23–17–17–1]. Any such approval should follow the requirements of this chapter for approving amendments to articles of incorporation.

adopted unless the same percentage of shareholders, six-eighths, agreed to the amendment. *Id.* at 565.

We follow the reasoning of the *Scott* decision and hold that article and bylaw provisions creating rights cannot be amended unless those rights are complied with in the amendment process. If the rule were any other, then the rights and protection intended by those included provisions would be illusory. Indiana NBOME could not eliminate the AOA's approval rights through merger without obtaining the AOA's consent.

Both NBOME and the AOA cite our supreme court's decision in *Gabhart v. Gabhart* (1977), 267 Ind. 370, 370 N.E.2d 345, as support for the respective positions. We disagree, though, that *Gabhart* has any applicability to the case here.

In *Gabhart*, the majority stockholders approved a merger that gave the minority stockholder a debenture and no ownership interest after the merger. Our supreme court held that the minority shareholder could challenge the merger as a *de facto* dissolution because the purpose of the merger was to eliminate the minority ownership interest.

The AOA contends that *Gabhart* supports its position, while NBOME argues that *Gabhart* is no longer good authority after the adoption of the Indiana Business Corporation Law in 1986. Specifically, NBOME cites to IC 23–1–44–8(c) which provides:

A shareholder [ ] who is entitled to dissent and obtain payment for the shareholder's shares under this chapter ... may not challenge the corporate action creating ... the shareholder's entitlement.

The Official Comment to IC 23–1–44–8(c) states:

[T]he Commission believed the [*Gabhart*] decision created substantial uncertainty about whether and to what extent minority shareholders could seek to enjoin or undo corporate transactions authorized by statute and approved by the majority. Given the potential disruption of corporate transactions were a Gabhart rule applied to the BCL, the General Assembly adopted subsection (c) as a categorical statutory rule

that shareholders entitled to dissenters' rights may not challenge the corporate action creating that entitlement. Hence, the kind of minority shareholder challenge to corporate action permitted by Gabhart under IC 23–1–5–7(c) is not permitted under subsection (c).

NBOME therefore contends that *Gabhart* does not provide authority for the trial court's grant of summary judgment here.

However, we believe that the *Gabhart* decision does not have any applicability to the present case at all. *Gabhart* construed IC 23–1–5–7(c) in the context of the General Corporation Act. The case before us is not covered by the General Corporation Act, but by the 1971 Not-for-Profit Act. Additionally, in *Gabhart*, the minority derives his capacity to sue by statute, from being a shareholder in the corporation. Here, the AOA is not a shareholder in Indiana NBOME and does not challenge from that capacity. The AOA derives its capacity to sue from being named as a third-party beneficiary to Indiana NBOME's articles of incorporation and bylaws. The *Gabhart* decision only construed IC 23–1–5–7(c) as not imposing a limit on a minority shareholder's right to challenge a merger which did not have valid business purposes. *Gabhart* does not apply to the case before us.

Nevertheless, the merger here of Indiana NBOME and Illinois NBOME was in violation of the principles laid out in *Scott.* The trial court correctly determined the merger of Indiana NBOME and Illinois NBOME was ineffective to eliminate the AOA's approval rights.

Affirmed.

RILEY and DARDEN, JJ., concurring.