HAAS CARRIAGE, INC.,
Appellant–Defendant,

v.

Mearl BERNA, Appellee–Plaintiff.

No. 10A01–9411–CV–378.

Court of Appeals of Indiana,
First District.

May 25, 1995.

Charles E. MacGregor, Barbara W. Gernert, Wyatt, Tarrant & Combs, New Albany, for appellant.

Stephen W. Voelker, Voelker Law Office, Jeffersonville, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Haas Carriage, Inc. ("Haas") appeals from the trial court's judgment in favor of its former employee, Mearl Berna. Berna brought an action for wrongful discharge against Haas and alleged that Haas had terminated his employment because he refused to commit an unlawful act. Following a bench trial, the trial court found that Berna was wrongfully discharged and awarded compensatory and punitive damages.

We affirm.

### ISSUES

Haas presents several issues for our review which we restate as follows:

1. Whether the trial court erred when it denied Haas' motion for summary judgment.

2. Whether the evidence was sufficient to support the finding that Haas discharged Berna for refusing to commit an unlawful act.

3. Whether the trial court erred when it awarded future wages as an element of compensatory damages.

4. Whether the evidence was sufficient to support the award of punitive damages.

### FACTS

The evidence most favorable to the judgment shows that Berna was employed by Haas as an over-the-road truck driver for approximately 18 years. During his employment with Haas, Berna was nominated for driver of the year, and also represented Haas in several statewide safe driving competitions. Berna was an at-will employee with no written or oral employment agreement. On March 13, 1992, Haas instructed Berna to travel to Middletown, Ohio, to pick up a 40,000 pound load of steel coils from Southern Ohio Steel Company. Berna refused to pick up the load. Berna had transported similar loads from Southern Ohio Steel on two prior occasions and had twice complained to Haas' safety director that the coils could not be hauled safely when secured in the manner in which Haas contemplated. From Ohio, Berna spoke with Haas' general manager, Randy Winegar, and informed Winegar that he was unaware of how the load could be properly secured and that the load was unsafe.

Then, on March 16, Berna met with Winegar and Haas' safety director. Berna again asserted his belief that the loads could not be hauled safely in the manner in which Haas chose to secure them. In response to Winegar's inquiry regarding future loads, Berna replied that he would not haul any loads from Southern Ohio Steel under the circumstances. Haas then terminated Berna's employment.

## DISCUSSION AND DECISION

### Issue One: Denial of Summary Judgment

After a hearing, the trial court denied Haas' motion for summary judgment. Thereafter, the trial proceeded to final judgment. Haas contends the trial court erred when it denied its motion for summary judgment.

When reviewing the denial of a motion for summary judgment, we apply the same standard as the trial court. *City of Evansville v. Moore* (1990), Ind., 563 N.E.2d 113, 114. Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The party seeking summary judgment bears the burden of establishing the propriety of the motion. *Miller v. Monsanto Co.* (1993), Ind.App., 626 N.E.2d 538, 541. All facts and inferences from the designated evidentiary matter must be liberally construed in favor of the nonmoving party. *Terre Haute First Nat. Bank v. Pacific Employers Ins. Co.* (1994), Ind.App., 634 N.E.2d 1336, 1337.

First, Haas argues that Berna's response to its motion for summary judgment was not in the form required by Trial Rule 56(C). Haas specifically asserts that Berna failed to designate evidence properly in opposition to summary judgment. In addition, Haas argues that it met its burden to show it was entitled to judgment as a matter of law. We disagree.

"How a party is to specifically designate material is not mandated by the rule." *National Bd. of Examiners for Osteopathic Physicians and Surgeons, Inc. v. American Osteopathic Ass'n* (1994), Ind.App., 645 N.E.2d 608, 615. Whether the parties designate to the court in a separate filing, or in a brief in opposition to the motion is within their discretion. *Id.* Provided that the trial court is apprised of the *specific material* upon which the parties rely in opposition to a motion for summary judgment, then the material may be considered. *Id.*

Berna's complaint alleged that his employment with Haas was terminated because he refused to transport a load of steel that did not comply with Federal Motor Carrier Safety Regulations. In other words, Berna claimed he was fired for refusing to perform an unlawful act. In support of its motion for summary judgment, Haas designated three affidavits and contended that Berna was fired for insubordination and not for refusing to perform an unlawful act. Ronald Owens, a former agent for the United States Department of Transportation, averred that he inspected a Haas trailer, that Haas' method for transporting steel coils complied with the Federal Motor Carrier Safety Regulations and, thus, that its transportation methods were not unlawful.

In opposition to Haas' motion, Berna submitted his own affidavit labeled "Affidavit in Opposition to Motion for Summary Judgment." In his affidavit, Berna asserted that he was discharged for refusing to haul the load in question, and that he refused to haul the load because it was unsafe and because he could have received a citation for a violation of the law. Berna further asserted that Haas had never instructed him how to safely load and secure the steel and that he had no knowledge that Haas had ever used the method described by Owens to secure its loads. In his brief in opposition to summary judgment, Berna directed the trial court to Indiana Code § 9–20–18–14 which provides that an individual who operates a vehicle carrying a load not safely secured commits a Class C infraction.[1]

---

1. I.C. § 9–20–18–14 provides:
   (a) This section does not apply to a vehicle that has sides that extend above the load unless the load is not safely secured.
   (b) A person who operates or permits the operation of a vehicle on which:
   (A) logs, lumber, pipe, poles, tanks, boilers, or similar objects are carries and not securely fastened by:

(i) metal chains;
(ii) wire cables;
(iii) steel strapping; or
(iv) logistic webbing of synthetic fibers;
identified as to strength and equipped with compatible hardware, that are of sufficient strength to hold the load in place under ordinary traffic or road conditions; and

We conclude Berna's designation of evidence complied with Trial Rule 56(C). His affidavit and the citations in his brief sufficiently "apprised" the trial court of the material upon which he relied in opposition to summary judgment. *See National Bd. of Examiners,* 645 N.E.2d at 615. Further, based upon the material designated to the trial court by both parties there was a genuine issue of material fact as to whether transporting the load in question would have been an unlawful act. Haas failed to meet its burden to establish it was entitled to judgment as a matter of law. The trial court did not err when it denied Haas' motion for summary judgment.

### Issue Two: Retaliatory Discharge

Haas correctly asserts that the essence of the employment at will doctrine is that an employment contract of indefinite duration is presumptively terminable at the will of either party. *McClanahan v. Remington Freight Lines* (1988), Ind., 517 N.E.2d 390, 392. However, our supreme court has recognized a few limited exceptions to the employment at will doctrine. The court has held that an at-will employee allegedly fired for refusing to commit an unlawful act for which he would be personally liable has a cause of action for wrongful discharge. *Id.* at 393.

The evidence is undisputed that Berna was discharged for refusing to haul the load of steel coils in question. Still, Haas contends the trial court erred when it concluded that Berna was discharged for refusing to commit an unlawful act. Specifically, Haas asserts the evidence was insufficient to support the trial court's finding that transporting the load in question would have been unlawful. We cannot agree.

Pursuant to Trial Rule 52, the trial court entered special findings at the request of the parties. When reviewing a judgment accompanied by requested findings of fact and conclusions of law, we are bound by a limited standard of review. *Cap Gemi-*

*ni America, Inc. v. Judd* (1992), Ind.App., 597 N.E.2d 1272, 1278, *trans. denied.* Our review is two-tiered: we first determine whether the evidence supports the findings and then whether the findings support the judgment. *Williams v. Rogier* (1993), Ind. App., 611 N.E.2d 189, 192, *trans. denied.* We will reverse only if we conclude that the findings are clearly erroneous. *Id.* We consider only the evidence which supports the judgment, and we will affirm the judgment unless the record is devoid of facts and inferences supporting the trial court's findings. *Id.* at 193.

Here, the trial court found that Berna would have violated Indiana Code § 8–2.1– 18–48, § 9–20–18–14, or § 9–21–8–50, if he would have transported the load in question. The trial court concluded that while Haas did not expressly request that Berna commit an illegal act, Haas knew or should have known that it was requiring its drivers to commit illegal acts.

The evidence shows that Berna's sole objection to hauling the load in question was that it was unsafe. Berna testified that it was his responsibility as the driver to ensure the safety of the load but that the manner in which Haas expected him to secure the load did not make it safe. As stated earlier, Indiana Code § 9–20–18–14 provides that an individual who operates a vehicle carrying an improperly secured load commits a Class C infraction. Indiana Code § 9–21–8–50 also provides in pertinent part:

A person who operates a tractor-trailer combination in a reckless or deliberate attempt to:

(1) endanger the safety or property of others;

commits a Class B misdemeanor.

In addition, Indiana Code § 8–2.1–18–48 provides that a violation of certain federal safety regulations constitutes a Class B infraction.

Accordingly, Indiana State Police Officer Dana Proffit, of the Motor Carrier Division, testified that as a law enforcement

---

(B) a load or part of a load more than ten (10) feet in length is not fastened by at least three (3) of the devices listed under subdivision (1), one (1) of which must be near each

end and the other at the approximate center of the load; and

(2) on a public street or highway;

commits a Class C infraction.

officer with the duty to enforce federal safety regulations, she could issue a citation to any truck driver who endangered the safety of the motoring public. Officer Proffit further stated that upon her review of several photographs, she believed that the manner Haas used to secure loads of steel coils did not comply with federal regulations. In its findings, the trial court specifically accepted Officer Proffit's testimony as true. Record at 210. Upon review of special findings, we do not reassess witness credibility. *Eden United, Inc. v. Short* (1991), Ind.App., 573 N.E.2d 920, 925. We conclude there was sufficient evidence to support the trial court's finding that Berna was discharged for refusing to perform an unlawful act. Haas has not shown reversible error on this issue.

### Issue Three: Compensatory Damage Award

Haas next contends the trial court erred when it awarded Berna future wages as compensatory damages. Specifically, Haas argues that because Berna was an at-will employee, the trial court's award of future wages was speculative and contrary to law.

Generally, the computation of damages is a matter within the sound discretion of the trial court. *Weisman v. Hopf-Himsel, Inc.* (1989), Ind.App., 535 N.E.2d 1222, 1232. A damage award will not be reversed upon appeal unless it is based on insufficient evidence or is contrary to law. *Willie's Constr. Co., Inc. v. Baker* (1992), Ind.App., 596 N.E.2d 958, 960, *trans. denied.* In determining whether the award is within the scope of the evidence, we may not reweigh the evidence or judge the credibility of witnesses. *Id.* at 961.

Our supreme court has recognized that the retaliatory discharge of an at-will employee constitutes an intentional wrongful act on the part of the employer for which the employee is entitled to be fully compensated

in damages. *Frampton v. Central Indiana Gas Co.* (1973), 260 Ind. 249, 253, 297 N.E.2d 425, 428. Retaliatory discharge of an employee at-will gives rise to a cause of action in tort, rather than an action for breach of contract. *Holtz v. Board of Commissioners of Elkhart County* (1990) Ind., 560 N.E.2d 645, 646.

Tort damages are designed to compensate the injured plaintiff and place him in the same financial position in which he would have been had the tort not occurred. 22 Am.Jur.2d Damages § 26 (1988). Recently, in *Remington Freight Lines, Inc. v. Larkey* (1994), Ind.App., 644 N.E.2d 931, this court upheld a jury award of future wages as damages for the wrongful discharge of an employee-at-will.[2] *Id.* at 941. In considering the relevance of the plaintiff's employment status we stated:

> In assessing the damages due an at-will employee who is wrongfully discharged, however, those damages must reflect compensation for the tort—the retaliatory discharge itself. Once the jury determined that the employee has been discharged wrongfully, *his status as employee at will is a nullity for the purpose of determining damages.*

*Id.* (emphasis added). We further concluded that once the employee has proven his discharge was retaliatory, damages must be assessed based upon a presumption of prospective employment. *Id.* Although it would have been within the employer's prerogative to discharge the employee at any time, "[w]e will not assume that, had the retaliatory discharge not occurred, the employer would have fired the employee for some other reason." *Id.* at 942.

If the employee is able to find comparable employment, damages may be recovered for the period in which he is unemployed. *Id.* If, however, the employee is unable to obtain comparable employment, the fact-finder should consider evidence of the

---

2. Haas contends that our supreme court's recent decision in *Jarboe v. Landmark Comm. Newspapers* (1994), Ind., 644 N.E.2d 118, is inconsistent with our decision in *Larkey.* However, in *Jarboe,* unlike *Larkey* and the present case, the discharged employee at-will brought his cause of action under the contract theory of promissory estoppel and damages were limited to those actually resulting from the detrimental reliance on the promise of employment. *Id.* at 122. Accordingly, the court's decision in *Jarboe* does not apply to the measure of tort damages available for retaliatory discharge.

difference between what he would have earned had he not been wrongfully discharged, and what he actually did earn following termination. *Id.* In *Larkey,* we pointed out that the presumed "prospective employment" of the discharged at-will employee is not infinite, and the employee is only entitled to damages which will compensate him for a reasonable amount of time. *Id.* However, the fact-finder has the task of determining a "reasonable time" for calculating wages after the employee's termination. *Id.*

In the instant case, the trial court found that Berna was discharged because he refused to perform an unlawful act. Berna had been employed by Haas for 18 years. Following his termination, Berna was employed as a truck driver elsewhere for six months and earned $12,000.00. While the court determined that Haas should receive credit for the wages earned by Berna since termination, the court concluded that Berna's subsequent employment was not comparable. Thus, the appropriate measure of damages is the difference between what Berna's earnings would have been had his employment at Haas continued, and his actual earnings. *See id.*

■ Prior to his termination, Berna earned $32,000.00 per year, or $615.39 per week at Haas. Thus, the court assessed the compensatory damages due Berna at $89,-553.90, based on the loss of three years and ten weeks worth of future wages less Berna's actual earnings of $12,000.00. Considering Berna's tenure and favorable employment record with Haas, we cannot say that the trial court abused its discretion when it determined that three years and ten weeks was a "reasonable time" period for calculating lost wages. The trial court's award of compensatory damages is supported by the evidence.

### Issue Four: Punitive Damage Award

Finally, Haas contends the evidence was insufficient to support the trial court's award of punitive damages. We disagree.

■ The tort of retaliatory discharge may support an award of punitive damages.

*See Larkey,* 644 N.E.2d at 941; *Peru Daily Tribune v. Shuler* (1989), Ind.App., 544 N.E.2d 560, 563. Punitive damages may be recovered only if there is clear and convincing evidence that the defendant's conduct was "inconsistent with the hypothesis that the tortious conduct was the result of a mistake of fact or law, honest error of judgment, over-zealousness, mere negligence, or other such noniniquitous human failing." *Reed v. Central Soya Co., Inc.* (1993), Ind., 621 N.E.2d 1069, 1076, *modified on other grounds,* (1994), Ind., 644 N.E.2d 84. Whether a party may recover punitive damages is usually a question for the finder of fact. *Id.*

Pursuant to its Finding of Fact Number 20, the trial court concluded that Berna's discharge resulted from Haas' "obdurate and oppressive behavior" rather than mere negligence. Record at 215. Accordingly, the trial court awarded Berna $1,000.00 in punitive damages. Haas argues that the court's award was clearly erroneous and not supported by the evidence. Finding Number 20 provided as follows:

20. Haas has a practice and procedure of not properly securing these steel coils. Haas has had accidents due to steel coils moving. Haas had a duty to make sure this load was secure when Haas hauled the load that Berna refused. The load was not properly secured. Haas told Berna if he did not want to haul this load, that he could turn in his keys. If Berna had hauled this load, even improperly secured, he would not have been discharged. Improperly secured loads are a threat not only to Haas' property, its driver, but to the motoring public. Lastly, Haas knew from experience that shifting loads caused accidents.

Record at 216.

■ In its brief, Haas concedes that there had been three incidents in which loads of steel coils were not properly secured. Brief of Appellant at 33. Indeed, Berna testified that Haas' general manager, Randy Winegar, informed him that Haas had insurance in the event that a load might escape. On cross-examination, Winegar admitted that the shifting of improperly secured steel coils

had caused previous accidents. Record at 429. Winegar testified that he instructed Berna's supervisor to inform Berna that if he did not want to haul the load he should turn in his keys. Winegar further stated that Berna would not have been fired had he hauled the load in question. Record at 297. Finally, the evidence shows that the load Berna refused to haul was eventually transported by another driver and arrived improperly secured. Record at 424.

We conclude there was sufficient evidence to demonstrate that Haas' conduct was not the result of mere negligence or honest error to support the trial court's award of punitive damages. Haas has shown no error here.

Affirmed.

BAKER, J., and SHARPNACK, C.J., concur.